**Salem**

DANNY WILSON MYERS

v.

COMMONWEALTH OF VIRGINIA

No. 0888-89-3

Decided February 5, 1991

■■■■■■■■■■■■■■■■

COUNSEL

Humes J. Franklin, Jr. (Franklin, Franklin, Denney, Heatwole & Ward, on briefs), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General; Birdie H. Jamison, Assistant Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**— The appellant, Danny Wilson Myers, was convicted in a jury trial of rape. On appeal, he contends that the evidence failed as a matter of law to show that he exerted force, threat or intimidation against the victim to compel her to submit to sexual intercourse with him against her will. We find that the evidence was sufficient and affirm the judgment of the trial court.

■ When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. . . . The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.

*Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted).

■ A conviction of rape may be sustained solely upon the credible testimony of the prosecutrix. *Snyder v. Commonwealth*, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); *Poindexter v. Commonwealth*, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972). "[T]he credibility of witnesses and the weight to be given to their testimony are questions exclusively within the province of a jury." *Barker v. Commonwealth*, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985).

The victim, a fifteen-year old girl who was then in the eighth grade, met the appellant, a thirty-seven year old man, through mutual friends on the evening of the alleged attack. The appellant agreed to take the victim in his truck to look for her boyfriend who she believed was "partying" with some other people on a

back country road known as the Coal Road. Some of their friends followed in another vehicle. The appellant let the victim drive his truck. As they proceeded out the Coal Road, they saw numerous cars parked along the road while their occupants "partied." At one point, the truck became involved in a "jam" with other vehicles, and the victim surrendered the driving to the appellant, who extricated it. The vehicle in which their friends were traveling dropped off, and the appellant's truck, driven by the victim, proceeded up the Coal Road to a remote area where there were no other vehicles or people nearby. The victim wanted to go back, so the appellant said that he would turn the truck around. He pulled off the road into a wooded area and stopped. He began to fondle the victim, and when she asked him what he was doing, he told her that "she was going to do something for him or get out and walk." The victim testified that she was "scared to death." The defendant did not threaten her with physical harm. He did not display a weapon. However, the victim testified that she was afraid that if she resisted the appellant, he would hurt her. She said that she was afraid that if she got out and walked, someone else would rape and kill her. She said that they were "way back up in the woods" and that "it was scary." The victim testified that she offered no resistance to the appellant, but submitted to sexual intercourse with him, because she had read that resistance could provoke violence, and she was afraid of injury or death.

The appellant testified that the victim asked him to take her up the Coal Road to look for her boyfriend. He said that he permitted her to drive because she knew where to go. He said that when they got to the point where they decided to turn around, the victim pulled off the road and asked for marijuana. He testified that they smoked some marijuana, and that he became ill and got out of the truck to relieve himself. He said that when he re-entered the truck, the victim had removed her clothing and offered herself to him voluntarily.

After having intercourse with the victim, the appellant then took her to the home of her friend, Joyce Bridge. On the way, he stopped at a service station where he bought a soda for her and some milk to soothe his stomach ulcer. At the victim's request, he waited for her at Ms. Bridge's home. He then took the victim and her friend, Jay Devoe, riding in his truck. After a while they returned to the Bridge home, where the appellant left the victim and

Devoe. During the first stop at the Bridge home, the victim made no complaint of having been raped, but when she returned, she told Ms. Bridge that the appellant had raped her.

The appellant acknowledges that he engaged in sexual intercourse with the victim, but contends that it was consensual. He argues that the victim's account is inherently incredible and that her lack of resistance and minimal protest demonstrate conclusively that she submitted willingly. We disagree.

The victim was a fifteen-year old girl who found herself in a remote and "scary" location confronted with sexual demands by a thirty-seven year old man whom she did not know well and of whom she was afraid. When told to submit or walk, she was frightened at the prospect of being alone and on foot in a deserted area and was fearful of whom she might meet and what might be done to her. She explained this and explained her reason, based on a book that she had read, for considering non-resistance to be the wiser course. Her account is not inherently unbelievable. Her credibility and the weight to be given to her testimony were peculiarly within the province of the jury. Under the circumstances described by the victim, and considering the respective ages of the victim and the appellant, her submission to him without physical resistance and with minimal protest was not consent. "Submission through fear to sexual intercourse is not consent." *Sutton v. Commonwealth*, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985).

The appellant points out that according to the victim's own account, after the assault on her, he got out of the truck to relieve himself. He says that she then had the opportunity to drive off without him. The victim explained that she was afraid to try this because the windows of the truck were open, one of the doors was open, and the truck was a "straight shift" vehicle which she had difficulty setting in motion. She said that she was afraid that if she attempted to drive off, the appellant would jump back in the truck and harm her. The appellant contends that the victim could have escaped at the service station where he bought drinks and could then have reported the assault. He points out that she made no complaint on their first return to the Bridge home. The victim explained that she feared that if she reported the attack on either of those occasions, the appellant might make trouble. She explained that she still wanted to try to find her boyfriend and was willing to remain in the appellant's presence if accompanied by

someone else. The appellant argues that these circumstances, following the alleged rape, show that the victim did not at that time fear him or resent him and are evidence that their sexual encounter had not been coerced. These circumstances and explanations were presented to the jury. Its appraisal of them will not be disturbed on appeal. Furthermore, it was the victim's state of mind at the time of the attack, not afterward, which determined whether her submission to intercourse with the appellant was coerced or consensual.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Coleman, J., and Moon, J., concurred.