COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Bray
Argued at Richmond, Virginia

ROGER TALLEY CLIFTON

v.          Record No. 0103-95-3                OPINION BY
                                        JUDGE JERE M. H. WILLIS, JR.
COMMONWEALTH OF VIRGINIA                     MARCH 26, 1996

            FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Charles H. Smith, Jr., Judge

            C. David Whaley (Anthony G. Spencer;
            Morchower, Luxton & Whaley, on brief), for
            appellant.

            Linwood T. Wells, Jr., Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     On appeal from his convictions in a jury trial of breaking

and entering with intent to commit rape and of rape, Roger Talley

Clifton contends (1) that the evidence is insufficient to support

his convictions, and (2) that the trial court erred by refusing

to give a jury instruction addressing his perception that the

victim consented.  We find no error and affirm the judgment of

the trial court.

     On appeal, we view the evidence in the light most favorable

to the Commonwealth, granting to it all reasonable inferences

fairly deducible therefrom.  Higginbotham v. Commonwealth, 216

Va. 349, 352, 218 S.E.2d 534, 537 (1975).  "The jury's verdict

will not be disturbed on appeal unless it is plainly wrong or

without evidence to support it."  Traverso v. Commonwealth, 6 Va.

App. 172, 176, 366 S.E.2d 719, 721 (1988).

"A conviction of rape may be sustained solely upon the credible testimony of the prosecutrix." Myers v. Commonwealth, 11 Va. App. 634, 635, 400 S.E.2d 803, 804 (1991). "'[T]he credibility of witnesses and the weight to be given to their testimony are questions exclusively within the province of a jury.'" Id. (citation omitted).

The victim testified that on the morning of January 6, 1994, her next door neighbor, Clifton, entered her house. Her husband was at work and her three children were asleep. She testified that she was in the kitchen, dressed only in a nightgown and underclothes, when she heard a "peck." She looked out the window and saw Clifton standing outside pointing at the door. She gestured for him to wait. When she walked into the front room, Clifton was already standing inside the door. He grabbed her and began rubbing her breasts. After she told him "to quit," he twisted her arm behind her back and dragged her to the couch. He bent her over the couch, pulled her panties down, and announced his intention to have sexual intercourse with her. She testified, "I told him no, stop, and I started crying." However, she said that she did not resist, but submitted to sexual intercourse with Clifton because she was afraid for her children and did not want them to be awakened and see what was happening.

During the intercourse, the victim saw her husband drive by and saw Clifton's daughter outside the house. She told Clifton of this, but he continued to have intercourse until he was

"finished." When she told Clifton that a black Blazer was pulling into his driveway, he released her and went home. She denied having had intercourse with Clifton previously.

Clifton testified that he and the victim had prior sexual relations in 1991. He testified that on the morning in question, he walked out onto his front porch and saw the victim motioning to him through the window. He walked over to her house and entered through an open door. He testified that she said, "it has been a long time since we did anything." He testified that she pulled the elastic waistband of his pants out, put her hand inside his pants, and fondled him. She then lifted her nightgown, knelt on the couch, reached behind her, grabbed his penis, and inserted it. He testified that while they were having intercourse, the victim saw her husband's car go by outside and became nervous. He assured her that her husband would not arrive for a few minutes and said "[l]et's finish what we started here."

After Clifton left, the victim telephoned her sister-in-law and her husband. The sister-in-law corroborated this, testifying that the victim telephoned her and told her that Clifton had raped her. When the victim's husband arrived home, he called the police. Officer Snodgrass of the Abingdon Police Department testified that when he arrived at the victim's home, she was upset and crying.

The victim was taken to the hospital for a rape examination. Dr. Moore, a medical expert who testified on Clifton's behalf,

stated that according to the victim's records, the examination did not disclose injury that would normally be expected to result from forcible sexual penetration.

## I.

Clifton acknowledges that he had sexual intercourse with the victim, but contends that it was consensual. He argues that her non-resistance proves her consent. We disagree.

The victim was in her own home when Clifton entered. Her three small children were asleep in their rooms, and her husband was at work. Her account sufficiently described a rape and was not inherently incredible. Her explanation that she did not resist because she was afraid for her children was reasonable. "Her credibility and the weight to be given to her testimony were peculiarly within the province of the jury." Myers at 637, 400 S.E.2d at 805.

## II.

The trial court gave the following instructions:

> Instruction 15.
> The defendant is charged with the crime of rape. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant had sexual intercourse with [the victim] who was not then the defendant's spouse; and
>
> (2) That it was against her will and without her consent; and
>
> (3) That it was by force, threat or intimidation. . . .

- 4 -

Instruction B.

    The Commonwealth need not show that [the victim] cried out or physically resisted the defendant in order to convict him of the offense for which he is charged, but the absence of such resistance may be considered to show that the act alleged was not against her will.

Instruction C.

    Consent by [the victim] is an absolute bar to conviction of rape. If, after consideration of all the evidence, you have a reasonable doubt as to whether [the victim] consented to have intercourse with him, then you shall find him not guilty.

The trial court refused the following jury instruction, which was proposed by Clifton:

    If you find the defendant actually believed that [the victim] was consenting to have sexual intercourse, and if his belief was reasonable, then you shall find him not guilty. The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant either knew that [the victim] did not consent to sexual intercourse, or that a reasonable person in the position of the defendant would have known that [the victim] did not consent to sexual intercourse.

Contending that the refusal of this instruction was error, Clifton argues that rape is a crime of intent and that the Commonwealth was required to prove that he knew or should have known that the intercourse was accomplished without the victim's consent. We disagree.

Although proof of rape requires proof of intent, the required intent is established upon proof that the accused knowingly and intentionally committed the acts constituting the

elements of rape.  The elements of rape, as pertinent to this case, consist of engaging in sexual intercourse with the victim, against her will, by force, threat, or intimidation.  See Code § 18.2-61(A); Carter v. Commonwealth, 16 Va. App. 118, 127, 428 S.E.2d 34, 41 (1993).  In support of a consent defense, an accused may produce evidence of circumstances, including conduct[1] or statements by the victim, tending to prove consent.  He may testify as to his observations or perceptions of statements or conduct by the victim suggesting consent.  However, the element to be proven by the Commonwealth is the fact that the intercourse was accomplished against the victim's will.  The accused's perception may be evidence bearing on the sufficiency of the proof of this element, but it is not itself an element of the crime.  See Bailey v. Commonwealth, 82 Va. 107, 111 (1886).[2]

Instructions 15, B, and C properly and fully informed the jury of the elements the Commonwealth was required to prove in order to convict Clifton of rape.  Instruction C specifically addressed Clifton's affirmative defense of consent.  The jury was instructed that if it had a reasonable doubt whether the victim

----

[1]Contrary to the assertions in the dissent, we do not hold that the victim's conduct is irrelevant, nor do we hold that consent can never be shown in the absence of words indicating a willingness to engage in intercourse.  We hold merely that the defendant's state of mind regarding the issue of consent is not an element the Commonwealth is required to prove.

[2]Although the law no longer requires, as proof of non-consent, the level of resistance recited in Bailey, the elements of rape remain the same.

consented to sexual intercourse with Clifton, it could not convict him of rape.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

BENTON, J., dissenting.

I disagree with the majority's holding that the trial judge did not err in refusing Clifton's proposed jury instruction. The principle is well established that "[a] jury must be instructed on any theory or affirmative defense supported by the evidence." McCoy v. Commonwealth, 9 Va. App. 227, 229, 385 S.E.2d 628, 629 (1989). Thus, this Court has "held that it was error not to give a separate instruction defining consent when 'consent was vital to [the] defense and was supported by sufficient evidence to make it a jury issue.'" Morse v. Commonwealth, 17 Va. App. 627, 637, 440 S.E.2d 145, 151 (1994) (citation omitted). As in Morse, the instruction that Clifton tendered in this case and that was rejected by the trial judge addressed "the meaning of consent." Id. Moreover, Clifton's evidence supported the giving of an instruction that would have required the jury, if it accepted Clifton's evidence, to determine whether consent occurred in the absence of a verbal manifestation of consent.

The Commonwealth's evidence proved that Clifton, the complainant's neighbor, entered complainant's residence when she was home with her children. The complainant testified that after Clifton began rubbing her breasts, she told him "to quit." She further testified that she told Clifton "no, stop" when he forcefully grabbed her, moved her to a sofa, and stated that he intended to have sexual intercourse with her. She testified

further that her responses were tempered because she did not want her children to awake and witness the assault. She denied any prior sexual relations with Clifton.

In his defense, Clifton testified that the complainant invited him into her residence while she was wearing a nightgown. He testified that the complainant talked about their prior sexual encounters, fondled him, and engaged in consensual sexual intercourse. He testified that she made no statement indicating that she was unwilling to have sexual intercourse. He further testified that the complainant became agitated and disengaged from the act when her husband drove by. She then expressed concern about her husband returning.

Clifton further testified that he had known the complainant for five years and that they had sexual intercourse on two previous occasions when her husband was absent. He also introduced in evidence a photograph of complainant in underwear and testified that she gave it to him.

Clifton's evidence included testimony by a physician that the complainant exhibited no signs of rape. The physician found no bruising marks on her wrists, arms, or body suggesting force. The doctor also testified that the complainant exhibited no signs of stress, emotions, fear, or anger. When she was examined, all of her "vital signs" were normal. The doctor further testified that the examination was "not consistent with what [he had] seen in the past or would expect to see."

The majority states that "Clifton argues that . . . the Commonwealth was required to prove that he knew the intercourse was accomplished without the victim's consent." I believe that the majority misperceives Clifton's argument. In his brief, Clifton argues that the jury could have found that he "actually and reasonably believed that she did [consent]." Clifton does not contend that the Commonwealth must affirmatively prove that he had an awareness that the complainant did not consent. Indeed, in Clifton's brief he acknowledges the principle that "[a] person who proceeds to accomplish intercourse, in the face of [the awareness that the consent of the other person is vital] . . . is a rapist unless he/she reasonably believed that his/her partner was truly consenting." Roger D. Groot, <u>Criminal Offenses and Defenses in Virginia</u> 380 (3d ed. 1994).

The majority also states that Clifton's proposed instruction was erroneous because, although "[t]he accused's perception may be evidence bearing on the sufficiency of proof, . . . it is not itself an element of the crime." Whether the complainant ever actually gave verbal consent obviously may be an important consideration in a rape prosecution; however, if the jury believed Clifton's testimony, it was required to assess a circumstance in which the complainant made no verbal statement bearing on consent. The jury should have been instructed on the question of how to determine whether the victim consented in the absence of a verbal expression. Without a clear verbal

manifestation of consent or lack thereof, the jury must consider the victim's conduct.  I believe that question should be determined by the standard of a reasonable person.  Thus, the ultimate issue posed by Clifton's evidence is whether a reasonable person in Clifton's position would have known, based upon the victim's conduct, that the complainant did not consent.  Under the majority's reasoning, rape must be classified as a strict liability crime because only "the fact" of consent can be proven.  The logical extension of that reasoning is that neither the conduct of a complainant, no matter how inviting, nor the intent of an accused, no matter how reasonable, is relevant in determining the manner in which to instruct the jury concerning the sufficiency of the evidence to prove consent.

In Virginia, rape is statutorily defined in pertinent part as follows:

> If any person has sexual intercourse with a complaining witness who is not his or her spouse . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person, . . . he or she shall be guilty of rape.

Code § 18.2-61(A).  Because the offense requires that the act be committed "against the complaining witness's will," id., rape, by definition, must occur without the consent of the complainant.  See Groot, supra, at 380.  Indeed, Virginia Model Jury Instruction No. 45.100 states that the act must be committed "against [the complainant's] will and without her consent."

- 11 -

The issue that Clifton's appeal raises is what intent is required to prove rape.  As Professor Groot notes, "rape is not a strict liability crime."  Groot, supra, at 380.  The Commonwealth must prove an intent by the accused.  Id.  However, the Commonwealth is not required to prove that an accused actually knew that the complainant did not consent.  Id.  The Commonwealth is only required to prove that under the circumstances the accused knew or should have known that the complainant did not wish to have sexual intercourse.  This objective standard allows the fact finder to consider all of the circumstances, including the victim's conduct.

Clifton argues that the instruction he tendered was based on this theory of the evidence and that his testimony was sufficient to support the instruction.  He further argues that he was entitled to have the jury instructed that he must be acquitted if he actually and reasonably believed that the complainant had consented.  See Groot, supra, at 394 n.20.

Although no Virginia cases address in detail the issue of consent, cases from other states have done so.  For example, the Supreme Court of Connecticut ruled as follows:

> A finding that a complainant had consented
> would implicitly negate a claim that the
> actor had compelled the complainant by force
> or threat to engage in sexual intercourse.
> Consent is not made an affirmative defense
> under our sex offense statutes, so, as in the
> case of the defense of alibi, the burden is
> upon the state to prove lack of consent
> beyond a reasonable doubt whenever the issue
> is raised.

- 12 -

While the word "consent" is commonly regarded as referring to the state of mind of the complainant in a sexual assault case, it cannot be viewed as a wholly subjective concept. Although the actual state of mind of the actor in a criminal case may in many instances be the issue upon which culpability depends, a defendant is not chargeable with knowledge of the internal workings of the minds of others except to the extent that he should reasonably have gained such knowledge from his observations of their conduct. The law of contract has come to recognize that a true "meeting of the minds" is no longer essential to the formation of a contract and that rights and obligations may arise from acts of the parties, usually their words, upon which a reasonable person would rely. Similarly, whether a complainant has consented to intercourse depends upon her manifestations of such consent as reasonably construed. If the conduct of the complainant under all the circumstances should reasonably be viewed as indicating consent to the act of intercourse, a defendant should not be found guilty because of some undisclosed mental reservation on the part of the complainant. Reasonable conduct ought not to be deemed criminal.

It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented.

<u>State v. Smith</u>, 554 A.2d 713, 717 (Conn. 1989)(citation omitted).

In his defense, Clifton testified concerning the facts and circumstances that he contends occurred on the day of the incident. His testimony described the complainant's attire and her conduct after, as he alleged, she invited him into her residence. His theory of defense was that, although the complainant did not verbally affirm her intentions, her conduct constituted consent or, at a minimum, gave rise to a reasonable belief in his mind that she consented. He contends that he actually believed from her conduct and surrounding circumstances that she consented and that his belief was reasonable.

The instruction that Clifton tendered was a correct statement of the law. It stated the following:

> If you find that the defendant actually believed that [the complainant] was consenting to have sexual intercourse, and if his belief was reasonable, then you shall find him not guilty. The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant either knew that [the complainant] did not consent to sexual intercourse, or that a reasonable person in the position of the defendant would have known that [the complainant] did not consent to sexual intercourse.

The instruction gave meaning to consent and clearly informed the jury that Clifton's subjective belief was insufficient to find him not guilty. "When the accused claims mistake as to the fact of consent, he/she should at most obtain an instruction that he/she cannot be convicted if (1) he/she actually believed the

victim was consenting, and (2) the belief was reasonable."
Groot, supra, at 394 n.20.  The instruction informed the jury
that it could convict only if the Commonwealth proved beyond a
reasonable doubt that Clifton subjectively did not believe the
victim had consented or that a reasonable person in Clifton's
position could not have believed the victim had consented.  Thus,
the jury was required to consider all of the circumstances
surrounding the case, including whether the victim actually
consented.

> The trial judge instructed the jury on consent as follows:
> Consent by [the victim] is an absolute bar to
> conviction of rape.  If, after consideration
> of all the evidence, you have a reasonable
> doubt as to whether [the victim] consented to
> have intercourse with him, then you shall
> find him not guilty.

Under the circumstances of this case, this instruction, which is
Instruction No. 45.700 from the Virginia Model Jury Instructions
(Criminal), was inadequate because it leaves ambiguous whether
consent may be manifested by conduct in the absence of verbal
expression.  If consent can be manifested by conduct and I
believe it can be, the jury must be given guidance.  The
instruction should include the directive that conduct will
suffice to establish consent but only if the defendant both
sincerely and reasonably interprets it as consent.  This
instruction failed to inform the jury that if they found, as
Clifton testified, that the complainant made no verbal
expressions, they could nonetheless find from the facts and

- 15 -

circumstances of complainant's conduct that Clifton sincerely and reasonably believed she consented.

For these reasons, I would reverse the conviction and remand for a new trial.