481 S.E.2d 486

**Darryl Lee WHITE**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1819–95–3.**

Court of Appeals of Virginia,
Salem.

Feb. 18, 1997.

Rehearing En Banc Granted April 1, 1997.

B. Leigh Drewry, Jr., Lynchburg, for appellant.

Eugene Murphy, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Present: MOON, C.J., and ELDER and BRAY, JJ.

MOON, Chief Judge.

Darryl Lee White was convicted of possession of cocaine with intent to distribute in violation of Code § 18.2–248. He raises two questions: whether the police lacked probable cause to conduct a warrantless search and seizure; and whether the evidence is sufficient to support his conviction. We affirm.

On December 30, 1994 at approximately 9:15 p.m., Officers B.R. Nesselroade, M.R. Soyers and D.J. Riley were on duty riding together in a patrol car in Lynchburg, Virginia. Nesselroade observed a group of five to ten males in a semicircle located between 615 and 613 Federal Street. One of the men was standing with his back to the street facing the other men. The group was standing next to a beige Cadillac which Nesselroade recognized as belonging to White.

As the officers approached they heard a shout of "5–0," a street term for police. The man facing the group turned around and from a distance of approximately twenty-five feet Nesselroade recognized White. The entire group of men ran. Nesselroade watched White and observed that his hand was clenched and that as he ran he made a downward motion and opened his fist. A large white object fell out of his hand and onto the ground. Nesselroade proceeded to that spot, retrieved the object, which from his experience appeared to be a piece of cocaine, and placed it in his shirt pocket. The substance was later determined to be 1.54 grams of cocaine.

While Nesselroade retrieved the cocaine, Soyers and Riley followed the men who had run behind the residences. When the officers reached the rear of the residences, they found White sitting on the back steps of one of the houses. The officers had White stand and patted him down for weapons. Soyers knew White and called in a warrant check. Nesselroade heard the warrant check on his radio and before a

response was received, he radioed Soyers and inquired if they had custody of White behind the house. Soyers replied affirmatively. Nesselroade testified, "I told them to bring him around front, that I got the dope that he dropped."

Soyers and Riley took White to the front of the residence where Nesselroade arrested White on the basis of the cocaine he had observed White drop. Nesselroade searched White and either Riley or Soyers handed Nesselroade a stocking cap they had found on White which contained $581 in various denominations. Nesselroade also found a pager on White.

After searching White, Nesselroade looked into the beige Cadillac near which White and the other men had been standing and which Nesselroade testified he recognized as White's vehicle. The front door of the car was wide open and the motor was running. Inside, Nesselroade saw what he believed to be crack cocaine shavings on the seat and floorboard. Entering the car to recover the shavings, Nesselroade also discovered, underneath an armrest, a digital scale partially wrapped in a brown paper bag.

Nesselroade testified that upon questioning, White stated that crack cocaine was present where he had been standing, that he knew different ways to weigh it, that he was familiar with the price of crack cocaine, and that it did sell for as much as the police believed. White also stated that the scale in the car did not belong to him. Nesselroade testified that White had not been informed that a scale had been found in the Cadillac prior to the time that White made the statement that he did not own the scale.

### Search and Seizure

White argues that his initial detention by Soyers and Riley was an unreasonable seizure of his person and that consequently, the pager, the stocking cap and its contents, and his statement should have been excluded as fruits of an unlawful search and seizure.

In considering a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the

Commonwealth and the decision of the trial judge will not be disturbed unless plainly wrong. *Greene v. Commonwealth,* 17 Va.App. 606, 608, 440 S.E.2d 138, 139 (1994).

■ Here, White was initially detained by officers executing a *Terry* stop and frisk. At the point that the officers approached White and patted him down, the record indicates that they had no information from Nesselroade. Consequently, to have been a lawful *Terry* stop and frisk, the officers' own observations and knowledge must have provided them with an articulable and reasonable suspicion of White's involvement in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). However, we need not determine if Soyers and Riley did in fact have such articulable and reasonable suspicion because, even assuming arguendo that the stop and frisk was improper, the ultimate search and arrest of White was based on probable cause provided by Nesselroade.

Nesselroade had probable cause to search White, and Nesselroade's order to detain White provided probable cause to Soyers and Riley because Nesselroade's knowledge constituted collective knowledge with the other officers. White argues that in *Penn v. Commonwealth,* 13 Va.App. 399, 412 S.E.2d 189 (1991), this Court rejected the notion of collective knowledge or the "police team" exception employed in other jurisdictions.

White misstates our holding in *Penn.* In *Penn,* an officer observed, through binoculars, the defendant litter. He conveyed this to the arresting officer who then approached the defendant and placed him under arrest. In so doing, the officer patted down the defendant and discovered cocaine in the defendant's pocket. Reviewing defendant's claim of illegal search and seizure, we concluded that a warrantless arrest for a misdemeanor committed outside the presence of the arresting officer is not valid where the information upon which the arrest is based is conveyed to the arresting officer by the witnessing officer. *Id.* at 404, 412 S.E.2d at 192. However, we also concluded that "[w]here an illegal arrest under Code

§ 19.2–81 [warrantless misdemeanor arrest committed in officer's presence] does not violate any constitutional rights, the defendant is not entitled to have evidence seized pursuant to that arrest excluded." *Id.* at 406, 412 S.E.2d at 193. Accordingly, we found that the witnessing officer in *Penn* did have probable cause and that "[t]he radio message from [the witnessing officer], which was based on [the witnessing officer's] personal observations, was sufficient to give [the arresting officer] probable cause to believe that Penn was guilty of littering." *Id.* at 408, 412 S.E.2d at 194.

Further, the Fourth Circuit addressed this issue directly in *United States v. Laughman,* 618 F.2d 1067 (4th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). Therein the court found that "[t]he law seems to be clear that so long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts." *Id.* at 1072. Therefore, if the knowledge possessed by Nesselroade was sufficient to establish probable cause, it is inconsequential that Soyers and Riley were not fully aware of that knowledge. *See id.* at 1072–73.

Addressing the proper standard for assessing probable cause, the Supreme Court stated in *Washington v. Commonwealth:*

> As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.

219 Va. 857, 862, 252 S.E.2d 326, 329 (1979). Here, Nesselroade's order to detain White was based on his direct observations of White. The record indicates that Nesselroade recognized White when he fled and that Nesselroade saw White

drop a white object from his hand while fleeing. Before ordering White's detention, Nesselroade had retrieved the substance, and based on his experience as a police officer familiar with drug trafficking, he concluded the substance was likely cocaine. When Nesselroade heard Soyers call in a warrant check for White, Nesselroade realized that the individual he had seen drop the cocaine had been found by Soyers.

Having found that Nesselroade had probable cause, this probable cause may be imputed to Soyers and Riley. *See Laughman,* 618 F.2d at 1072. Consequently, assuming arguendo, that Soyers' and Riley's seizure and patdown of White were improper, the evidence is nonetheless sufficient to find that Nesselroade's radio order provided Soyers and Riley with probable cause to place White under arrest and to escort him to Nesselroade. Accordingly, the subsequent search revealing White's pager, stocking cap and money was reasonable, and the evidence was properly admitted. We conclude that the trial court's findings are supported by the evidence.

█ We note that the record is unclear as to whether Soyers' and Riley's patdown of White resulted in their discovery of his stocking cap containing roughly $581. However, even assuming that the officers did discover the cap and assuming that the search was improper, the cap is nevertheless admissible under the inevitable discovery exception. *Walls v. Commonwealth,* 2 Va.App. 639, 655, 347 S.E.2d 175, 184 (1986). Nesselroade recognized White when the officers arrived on the scene and he observed White flee and drop a substance Nesselroade subsequently determined to be cocaine. Consequently, Nesselroade had an independent and proper cause for searching White. It was ultimately the probable cause provided by Nesselroade which resulted in White being arrested and searched. If in fact White's stocking cap was discovered by Soyers and Riley, had it not been discovered during their initial search, it would have been discovered during the search by Nesselroade subsequent to White's arrest.

## Sufficiency of the Evidence

White asserts that the lighting was insufficient and the distance too great for Nesselroade to have observed what, if anything, White dropped. He further contends that Nesselroade went looking for drug dealers and that "[Nesselroade's] previous encounter with [White], his expectations, fears, and anticipations . . . color[ed] his interpretation in an ambiguous situation." On appeal, the evidence is to be viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Stockton v. Commonwealth,* 227 Va. 124, 145, 314 S.E.2d 371, 385, *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

■ Here, there is sufficient evidence to support the trial court's finding that White possessed cocaine. Nesselroade testified that he observed White possess and discard cocaine. It is for the trial court to make determinations of credibility. *Myers v. Commonwealth,* 11 Va.App. 634, 400 S.E.2d 803 (1991). In addition to Nesselroade's direct observations, the record indicates that White made statements to the police indicating that crack cocaine was present at the time he was observed.

■ The record also contains evidence sufficient to support the trial court's finding that White possessed cocaine with intent to distribute. "Because direct proof of intent is often impossible, it must be shown by circumstantial evidence." *Servis v. Commonwealth,* 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). Circumstantial proof of a defendant's intent includes the quantity of the drug discovered, the packaging of the drugs, and the presence or absence of drug paraphernalia. *Id.* at 524–25, 371 S.E.2d at 165.

■ Here, White was found to have possessed 1.54 grams of cocaine, a relatively small amount. " 'Possession of a

small quantity creates an inference that the drug is for personal use.'" *Id.* at 524, 371 S.E.2d at 165 (quoting *Monroe v. Commonwealth*, 4 Va.App. 154, 156, 355 S.E.2d 336, 337 (1987)). However, possession of a small amount of a drug, "when considered with other circumstances, may be sufficient to establish an intent to distribute." *Id.* Possession of drug paraphernalia and significant amounts of money are among the circumstances which may serve to negate an inference of possession for personal use. In addition to 1.54 grams of cocaine, evidence was presented that White possessed a pager, $581 in cash, and an electronic scale. We have regularly recognized pagers as tools of the drug trade. *See Wilkins v. Commonwealth*, 18 Va.App. 293, 296, 443 S.E.2d 440, 442 (1994). Possession of a large sum of cash, especially in small denominations, is also regularly recognized as a factor indicating intent to distribute. *See Colbert v. Commonwealth*, 219 Va. 1, 4, 244 S.E.2d 748, 748–49 (1978); *Glenn v. Commonwealth*, 10 Va.App. 150, 155, 390 S.E.2d 505, 508 (1990). White's possession of an electronic scale concealed in his car and crack cocaine shavings also found in the car, provide a sufficient basis to support an inference that White was engaged in cutting up and weighing cocaine in his car. In view of White's possession of cocaine, the drug paraphernalia and the large sum of money, we find the record sufficient to support the trial court's finding that White possessed cocaine with intent to distribute.

*Affirmed.*

ELDER, Judge, dissenting.

I respectfully dissent. The majority argues that scrutiny of the initial *Terry* stop of appellant is unnecessary because, "even assuming arguendo that the stop and frisk was improper, the ultimate search and arrest of White was based on probable cause provided by Nesselroade." However, the legality of the initial stop is germane to the Fourth Amendment analysis of this case because it determines whether or not the items seized prior to and at the time of the subsequent arrest are "fruit of the poisonous tree."

I would hold that the initial stop of appellant by Officers Soyers and Riley was unlawful and that references to the evidence obtained from it, a stocking cap and $581 in cash, should have been suppressed. I would also hold that Officer Nesselroade's subsequent arrest of appellant, though based on probable cause, was made possible by the initial illegal seizure, and that references to the pager obtained during the search incident to this arrest should have been excluded under the "fruit of the poisonous tree" doctrine. Finally, I would hold that the erroneous admission of this evidence was not harmless.

First, I would hold that the initial *Terry* stop of appellant was illegal and that the evidence acquired from it should have been suppressed. The record indicates that the three officers drove toward a group of males congregated in a semicircle on property adjacent to a street. The officers heard someone yell a slang-term for "police" and watched as the group quickly dispersed. The officers pulled over to the curb and pursued on foot various members of the group. The record does not establish that Officers Soyers and Riley saw appellant run from the scene. Instead, the record indicates that Officers Soyers and Riley had chased other members of the group when they came upon appellant sitting on steps behind a nearby residence. When the officers noticed appellant, Officer Soyers "had him stand up and patted him down for weapons." The patdown uncovered the stocking cap filled with cash. The officers then radioed the dispatcher to run a check for any outstanding warrants relating to appellant. When Officer Nesselroade, who was in a different location, overheard the request for a warrant check on his radio, he contacted Officers Soyers and Riley, told them that he had "the dope" dropped by appellant, and asked them to bring appellant to the front side of the residence.

Based on this record, I would hold that Officers Soyers and Riley lacked a reasonable articulable suspicion to stop and frisk appellant. *See Gregory v. Commonwealth,* 22 Va.App. 100, 105, 468 S.E.2d 117, 120 (1996) (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968))

(stating that "[a] police officer may lawfully stop and frisk an individual if the officer possesses a reasonable suspicion, based on articulable facts, that the individual is or is about to be engaged in criminal activity"). At the time Officers Soyers and Riley initially stopped appellant, they had no knowledge that appellant was related to the group previously gathered near the street. The record indicates that these officers were not aware of any facts that distinguished appellant from a neighborhood resident who was casually sitting on steps behind a residence.

The majority relies on the imputed knowledge of Officer Nesselroade to justify the decision of Officers Soyers and Riley to bring appellant to Officer Nesselroade for arrest. However, this reasoning cannot validate the initial stop and frisk of appellant, which was completed before Officers Soyers and Riley communicated with Officer Nesselroade. Fourth Amendment cases dealing with the "collective knowledge" of police officers require that police officers actually communicate with each other *before* knowledge will be imputed from one to another.

In *Jacques v. Commonwealth,* this Court held that an officer's suspicion that the defendant was engaged in drug activity was reasonable *after* the officer had received "an official police broadcast that a vehicle fitting the description of [the defendant's] was wanted in connection with two serious crimes." 12 Va.App. 591, 593–94, 405 S.E.2d 630, 631 (1991). In *United States v. Laughman,* the Fourth Circuit held that officers making an arrest need not be personally aware of the factual basis of probable cause if "the officer *who orders* an arrest or search has knowledge of facts establishing probable cause." 618 F.2d 1067, 1072–73 (1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980) (emphasis added). In both cases, the officer with actual knowledge of the factual basis of probable cause or reasonable suspicion communicated with the arresting or searching officer *before* the arrest or search occurred.

In this case, however, the stop and search of appellant was unlawful because, although Officer Nesselroade had reasonable suspicion to stop appellant, he did not communicate the basis of his suspicion to Officers Soyers and Riley until *after* appellant had been seized and searched. Officer Nesselroade's reasonable suspicion was based on his observation of a "large white piece of something" falling from appellant's hand as appellant fled the scene and Officer Nesselroade's subsequent identification of the object as crack cocaine. However, the record indicates that Officer Nesselroade did not communicate these observations to Officers Soyers and Riley until after these two officers had stopped and frisked appellant and called in their warrant check. Thus, Officer Nesselroade's knowledge could not be imputed to Officers Soyers and Riley to justify the initial seizure of appellant, and the trial court erred when it admitted references to the stocking cap and money taken from appellant during this unlawful activity.

I would also hold that the reference to the pager found on appellant's person after appellant was arrested by Officer Nesselroade should have been suppressed because it was "fruit of the poisonous tree." *See Walls v. Commonwealth,* 2 Va.App. 639, 651–52, 347 S.E.2d 175, 182 (1986). The record indicates that after Officer Nesselroade overheard the other officers' request for a warrant check, he radioed the other officers to bring appellant to him. Officer Nesselroade then arrested and searched appellant. During this search, Officer Nesselroade discovered a pager on appellant's person. Although appellant's pager was obtained during a search incident to arrest, appellant's arrest was the direct "fruit" of his unlawful seizure by Officers Soyers and Riley. Thus, the pager should have been excluded because its discovery resulted from "the unlawful act," *Warlick v. Commonwealth,* 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974), and because it was not obtained "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

Finally, I would hold that the erroneous admission of the evidence regarding the cash and the pager was not harmless

beyond a reasonable doubt. *See Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (holding that constitutional error must be harmless beyond a reasonable doubt). Without this evidence, the remaining proof of appellant's intention to distribute cocaine is less than overwhelming. First, the amount of crack cocaine possessed by appellant was relatively small, only 1.54 grams. *See Dukes v. Commonwealth,* 227 Va. 119, 122, 313 S.E.2d 382, 384 (1984) (stating that a "relatively small quantity of [drugs] in the defendant's possession warrants the inference that it was for [the defendant's] personal use"). In addition, the record indicates that an electronic scale and "crack shavings" were found in appellant's car at the scene. However, the record does not conclusively prove that appellant either owned or used the scale. The Commonwealth did not introduce evidence of appellant's fingerprints on the scale, and appellant said in his post-arrest statement to Officer Nesselroade that the scale belonged to someone else. Based on this evidence, a reasonable fact finder could have concluded that the scale belonged to one of the other individuals who fled the scene when the officers appeared.

The remaining evidence of appellant's intent to distribute cocaine was his post-arrest statement to Officer Nesselroade that he knew the techniques of weighing crack cocaine and that he was familiar with its current market price. However, a reasonable fact finder could have concluded that appellant had obtained this knowledge through his experience as a buyer of crack cocaine rather than as a seller. *See Wilson v. Commonwealth,* 16 Va.App. 213, 223–24, 429 S.E.2d 229, 235–36 (1993), *aff'd en banc,* 17 Va.App. 248, 436 S.E.2d 193 (1993) (holding that non-constitutional error was not harmless when evidence regarding intent to distribute cocaine supported the conclusion that the defendant was only a user of the drug).

For the foregoing reasons, I respectfully dissent.

**248**

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On March 3, 1997 came Darryl Lee White, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on February 18, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on February 18, 1997 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.