COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Benton, Coleman, Willis,
        Elder, Bray, Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


DARRYL LEE WHITE

                                        OPINION BY
v.   Record No. 1819-95-3    CHIEF JUDGE NORMAN K. MOON
                                     OCTOBER 28, 1997
COMMONWEALTH OF VIRGINIA


                    UPON REHEARING EN BANC

      FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                  Richard S. Miller, Judge

      B. Leigh Drewry, Jr., for appellant.

      Eugene Murphy, Assistant Attorney General
      (James S. Gilmore, III, Attorney General, on
      brief), for appellee.


     Darryl Lee White was convicted of possession of cocaine with

intent to distribute in violation of Code § 18.2-248.  On

February 18, 1997, a panel of this Court, with one judge

dissenting, affirmed the conviction.  See White v. Commonwealth,

24 Va. App. 227, 481 S.E.2d 486 (1997).  Upon rehearing en banc,

White raises two questions: (1) whether the police lacked

probable cause to conduct a warrantless search and seizure; and

(2) whether the evidence is sufficient to support his conviction.

 Finding no error, we affirm.

     On December 30, 1994, at approximately 9:15 p.m., Officers

Nesselroade, Soyers, and Riley were on duty riding together in a

patrol car in Lynchburg, Virginia.  Nesselroade observed a group

of five to ten males in a semicircle located between 613 and 615

Federal Street.  One of the men was standing with his back to the

street facing the other men. The group was standing next to a beige Cadillac which Nesselroade recognized as belonging to White.

As the officers approached, they heard a shout of "5-0," a street term for police. The man facing the group turned around and, from a distance of approximately twenty-five feet, Nesselroade recognized White. The entire group of men ran, leaving the Cadillac's motor running and one of its doors wide open. Nesselroade watched White and observed that his hand was clenched and that as he ran he made a downward motion and opened his fist. A large white object fell from his hand and onto the ground. Nesselroade proceeded to that spot, retrieved the object, which from his experience appeared to be a piece of cocaine, and placed it in his shirt pocket. The substance was later determined to be 1.54 grams of cocaine.

While Nesselroade retrieved the cocaine, Soyers and Riley followed the men who had run behind the residences. When the officers reached the rear of the residences, they found White sitting on the back steps of one of the houses. The officers had White stand and patted him down for weapons. Soyers knew White and called in a warrant check. Nesselroade heard the warrant check on his radio and before a response was received, he radioed Soyers and asked if they had custody of White behind the house. Soyers replied affirmatively. Nesselroade testified, "I told them to bring him around front, that I got the dope that he dropped."

Soyers and Riley took White to the front of the residence where Nesselroade arrested White on the basis of the cocaine he had observed White drop. Nesselroade searched White and either Riley or Soyers handed Nesselroade a stocking cap they had found on White which contained $581 in various denominations. Nesselroade also found a pager on White.

After searching White, Nesselroade looked into the beige Cadillac near where White and the other men had been standing and which Nesselroade testified he recognized as White's vehicle. Nesselroade saw what he believed to be crack cocaine shavings on the seat and floorboard. Entering the car to recover the shavings, Nesselroade also discovered, underneath an armrest, a digital scale partially wrapped in a brown paper bag.

Nesselroade testified that upon questioning, White stated that crack cocaine was present where he had been standing, that he knew different ways to weigh it, that he was familiar with the price of crack cocaine, and that it did sell for as much as the police believed. White also stated that the scale in the car did not belong to him. Nesselroade testified that White had not been informed that a scale had been found in the Cadillac prior to the time that White made the statement that he did not own the scale.

Search and Seizure

White argues that his initial detention by Soyers and Riley was an unreasonable seizure of his person and that, consequently, the pager, the stocking cap and its contents, and his statement should have been excluded as fruits of an unlawful search and

seizure.

In considering a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the Commonwealth, and the decision of the trial judge will not be disturbed unless plainly wrong. Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

Here, White was initially detained by officers executing a Terry stop and frisk. At the point that the officers approached White and patted him down, the record indicates that they had no information from Nesselroade. Consequently, to have been a lawful Terry stop and frisk, the officers' own observations and knowledge must have provided them with an articulable and reasonable suspicion of White's involvement in criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968).

Officers Soyers and Riley observed a group of men gathered around a car at approximately 9:15 p.m. on a winter night. They heard someone yell a street term for the police and then saw the men run behind a house, leaving the engine of the Cadillac running and one of its doors wide open. Officers Soyers and Riley chased the group of men behind the houses and found White sitting on the steps of one of the houses, despite the time of the year and the time of day. Officer Soyers recognized White from previous encounters with him and called in a warrant check.

Viewed together, this evidence supports a finding that Officers Soyers and Riley had an articulable and reasonable suspicion that the group had been engaged in some criminal

- 4 -

activity and that White was a member of the group. See id. at 21; Thomas v. Commonwealth, 16 Va. App. 851, 856, 434 S.E.2d 319, 322 (1993) (close physical proximity and close proximity in time support a finding of an articulable suspicion sufficient to justify a Terry stop); Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51-52 (1991) (noting that "circumstances we may consider [in a Terry-stop analysis] include 'the "characteristics of the area" where the stop occurs, [and] the time of the stop, whether late at night or not'") (quoting Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987)); Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989) ("Trained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.") (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975)). We therefore hold that the trial court's findings are supported by the evidence.

## Sufficiency of the Evidence

White asserts that the lighting was insufficient and the distance too great for Nesselroade to have observed what, if anything, White dropped. He further contends that Nesselroade was looking for drug dealers and that "[Nesselroade's] previous encounter with [White], his expectations, fears, and anticipations . . . color[ed] his interpretation in an ambiguous situation." On appeal, the evidence is to be viewed in the light most favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom. Higginbotham v.
Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The
trial court's verdict will not be disturbed on appeal unless it
is plainly wrong or without evidence to support it. Stockton v.
Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385, cert.
denied, 469 U.S. 873 (1984).

Here, there is sufficient evidence to support the trial
court's finding that White possessed cocaine. Nesselroade
testified that he observed White possess and discard cocaine. It
is for the trial court to make determinations of credibility.
Myers v. Commonwealth, 11 Va. App. 634, 400 S.E.2d 803 (1991).
In addition to Nesselroade's direct observations, the record
indicates that White made statements to the police indicating
that crack cocaine was present at the time he was observed.

The record also contains evidence sufficient to support the
trial court's finding that White possessed cocaine with intent to
distribute. "Because direct proof of intent is often impossible,
it must be shown by circumstantial evidence." Servis v.
Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).
Circumstantial proof of a defendant's intent includes the
quantity of the drug discovered, the packaging of the drugs, and
the presence or absence of drug paraphernalia. Id. at 524-25,
371 S.E.2d at 165.

Here, White was found to have possessed 1.54 grams of
cocaine, a relatively small amount. "'Possession of a small
quantity creates an inference that the drug is for personal

use.'" Id. at 524, 371 S.E.2d at 165 (quoting Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987)). Nevertheless, possession of a small amount of a drug, "when considered with other circumstances, may be sufficient to establish an intent to distribute." Id. Possession of drug paraphernalia and significant amounts of money are among the circumstances which may serve to negate an inference of possession for personal use. In addition to 1.54 grams of cocaine, evidence was presented that White possessed a pager, $581 in cash, and an electronic scale. We have regularly recognized pagers as tools of the drug trade. See Wilkins v. Commonwealth, 18 Va. App. 293, 296, 443 S.E.2d 440, 442 (1994). Possession of a large sum of cash, especially in small denominations, is also regularly recognized as a factor indicating intent to distribute. See Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 748-49 (1978); Glenn v. Commonwealth, 10 Va. App. 150, 155, 390 S.E.2d 505, 508 (1990). White's possession of an electronic scale concealed in his car and the crack cocaine shavings also found in the car provide a sufficient basis to support an inference that White was engaged in cutting up and weighing cocaine in his car. In view of White's possession of cocaine, the drug paraphernalia, and the large sum of money, we find the record sufficient to support the

trial court's finding that White possessed cocaine with intent to distribute.  We therefore affirm.

<u>Affirmed.</u>

Elder, J., with whom Benton, J., joins, dissenting.

I disagree that the officers who detained White had an articulable, reasonable suspicion that "White was a member of the group" that drew the officers' attention. The testimony given at the suppression hearing indicates that, at the time Officers Soyers and Riley approached White on the steps, the officers could only speculate that White was associated with the group of men they had observed near the street.

I would hold that the initial stop of White by Officers Soyers and Riley was unlawful and that references to the evidence obtained from it, a stocking cap and $581 in cash, should have been suppressed. I would also hold that Officer Nesselroade's subsequent arrest of White, though based on probable cause, was made possible by the initial illegal seizure and that references to the pager obtained during the search incident to this arrest should have been excluded under the "fruit of the poisonous tree" doctrine. Finally, I would hold that the erroneous admission of this evidence was not harmless.

I.

First, I would hold that the initial Terry stop of White was illegal and that the evidence acquired from it should have been suppressed. Only Officers Nesselroade and Soyers testified at the suppression hearing. Their testimony indicates that the three officers drove toward a group of males congregated in a semicircle on property adjacent to a street. The officers heard someone yell a slang term for "police" and watched as the group

- 9 -

quickly dispersed. The officers pulled over to the curb and pursued on foot various members of the group. Officer Soyers testified that he saw members of the group run behind the residence and that he and Officer Riley followed them. Officer Soyers testified that when he and Officer Riley arrived behind the residence, they noticed White "sitting on some steps." Officer Soyers testified that he knew White from previous encounters. The two officers "had [White] stand up and patted him down for weapons." At some point during the seizure of White behind the house, the officers recovered the stocking cap filled with cash. Although Officer Nesselroade testified that he recognized White and saw him drop "a large white piece of something" onto the ground as he ran from the street, Officer Soyers testified that "Officer Nesselroade never gave [him] any information" before he and Officer Riley seized White. No testimony established that Officers Soyers and Riley saw White run from the scene.

Based on these circumstances, I would hold that Officers Soyers and Riley lacked a reasonable, articulable suspicion that White had been engaged in criminal activity. Nothing known to the officers at the time they seized White distinguished him from a neighborhood resident who was merely sitting behind a residence. Officer Soyers did not testify that he saw White among the group of individuals congregated near the street, and nothing in his testimony indicated an articulable basis for his belief that White was a member of the group. Instead, Officer

Soyers testified that he noticed White on the back steps, recognized him from previous encounters, and decided with Officer Riley to stop and frisk him.  Based on these facts, I would hold that the decision to seize White was founded on nothing more than a hunch.

The majority places great weight on the date and time the seizure occurred and on White's proximity to the street where Officers Soyers and Riley had observed the group.  It implies that, based on these facts, the officers could reasonably exclude the likelihood that White was a resident or visitor of the house who was innocently sitting on the steps.  However, the mere fact that an officer pursuing unknown members of a group encounters a person sitting behind a nearby residence during the nighttime in December does not justify that officer's suspicion that the person behind the residence was a member of the group. Application of this reasoning would allow police to conduct sweep searches of residential neighborhoods when looking for a fleeing suspect during the nighttime hours of the winter months.  Without more information linking White to the group, I would hold that Officers Soyers and Riley lacked articulable, reasonable suspicion required to stop and frisk White.  Thus, I would hold that the trial court erred when it admitted references to the stocking cap and money taken from White during this unlawful activity.

## II.

I would also hold that the reference to the pager found on White's person after he was arrested by Officer Nesselroade should have been suppressed because it was "fruit of the poisonous tree."  See Walls v. Commonwealth, 2 Va. App. 639, 651-52, 347 S.E.2d 175, 182 (1986).  The record indicates that after Officer Nesselroade overheard the other officers' request for a warrant check, he radioed the officers to bring White to him.  Officer Nesselroade then arrested White and searched him. During the search, Officer Nesselroade recovered a pager. Although White's pager was obtained during a search incident to arrest, White's arrest was the direct "fruit" of his unlawful seizure by Officers Soyers and Riley.  Thus, the pager should have been excluded because its discovery resulted from "the unlawful act," Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974), and because it was not obtained "by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L.Ed.2d. 441 (1963).

## III.

Finally, I would hold that the erroneous admission of the evidence regarding the cash and the pager was not harmless beyond a reasonable doubt.  See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (holding that constitutional error must be harmless beyond a reasonable doubt).  Without this evidence, the remaining proof of White's intention

to distribute cocaine is less than overwhelming.  First, the amount of crack cocaine possessed by White was relatively small, only 1.54 grams.  See Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 384 (1984) (stating that a "relatively small quantity of [drugs] in the defendant's possession warrants the inference that it was for [the defendant's] personal use").  In addition, the record indicates that an electronic scale and "crack shavings" were found in White's car at the scene.  However, the record does not conclusively prove that White either owned or used the scale.  The Commonwealth did not introduce evidence of White's fingerprints on the scale, and White said in his post-arrest statement to Officer Nesselroade that the scale belonged to someone else.  Based on this evidence, a reasonable fact finder could have concluded that the scale belonged to one of the other individuals who fled the scene when the officers appeared.

The remaining evidence of White's intent to distribute cocaine was his post-arrest statement to Officer Nesselroade that he knew the techniques of weighing crack cocaine and that he was familiar with its current market price.  However, a reasonable fact finder could have concluded that White had obtained this knowledge through his experience as a buyer of crack cocaine rather than as a seller.  See Wilson v. Commonwealth, 16 Va. App. 213, 223-24, 429 S.E.2d 229, 235-36 (1993), aff'd en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993) (holding that non-constitutional error was not harmless when evidence regarding intent to

distribute cocaine supported the conclusion that the defendant was only a user of the drug).

For the foregoing reasons, I respectfully dissent.