429 S.E.2d 229 (1993)
Alvin McKay WILSON
v.
COMMONWEALTH of Virginia.
Record No. 0191-91-2.
Court of Appeals of Virginia.
April 6, 1993.
Rehearing En Banc Granted May 26, 1993.
*230 William B. Kerkam, III, Richmond (Bremner, Baber & Janus, on brief), for appellant.
Thomas C. Daniel, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BAKER, COLEMAN and BRAY, JJ.
COLEMAN, Judge.
In this appeal, Alvin McKay Wilson, the appellant, asserts that the trial court erred when it (1) failed to grant his motion to suppress evidence for the reason that the search warrant did not adequately describe the premises to be searched; (2) permitted the Commonwealth to introduce testimony that the witness on prior occasions had purchased cocaine from the appellant; and (3) held the evidence was sufficient to support his bench trial conviction for possessing cocaine with the intent to distribute. We hold that the trial court did not err in denying Wilson's motion to suppress the evidence, but that it erred by admitting testimony that Wilson previously had sold cocaine. We cannot say that the error was harmless. Because we reverse and remand the conviction for trial error, we do not address the sufficiency of the evidence.
Viewing the evidence in the light most favorable to the Commonwealth and granting to it all reasonable inferences fairly deducible therefrom, Higginbotham v. *231 Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the record shows that on June 20, 1990, Officer John Ward of the Richmond police executed a search warrant at Wilson's apartment. In the apartment, Ward found two razor blades in the bathroom, one in the kitchen, and one in the living room, each containing cocaine residue. He also found a plastic bag in a kitchen drawer that contained a bottle of Inositol, a strainer, and cocaine residue. He further found a bowl in the kitchen that held six plastic bags containing a total of five and one-half grams of cocaine, and on a top shelf of a cabinet, he found a glass beaker containing cocaine. In addition, he found in the kitchen, on top of a refrigerator, several plastic baggies with the corners cut out and ten to fifteen similar baggies cut in the same manner in an open garbage can.
The affidavit made by Officer Ward, upon which the search warrant was issued, described the place to be searched as follows:
The entire first floor of the house located at 3615 Stockton St. and the curtilage thereof. Also any and all containers in this dwelling house in which this controlled substance could be stored. This location is in the City of Richmond, South of the James River.
The items to be searched for were described as follows:
Cocaine a Schedule II controlled substance, all paraphernalia used in the packaging and distribution of this controlled substance. Also any and all records pertaining to the distribution of this controlled substance.
The facts constituting the basis for probable cause for the search were as follows:
On June 20, 1990 at approximately 1700 hours your affiant spoke with Detective A. Michael Scott of the Richmond Bureau of Police Intelligence Division and received the following information. Det. Scott had received the following information from a confidential reliable informant. The informant advised Det. Scott that while in the house located at 3615 Stockton St. the first floor. [sic] In the city of Richmond Virginia within the past 36 hours this informant observed an unknown B/M sell several small clear plastic bags of white powder substance to several unknown subjects as they entered the house. This informant has in the past used Cocaine and is familiar with its appearance and the different methods used in consuming, packaging and distributing this controlled substance. The packages the informant saw for sale at 3615 Stockton St. was [sic] Cocaine.
The affidavit further stated that the information received by Officer Ward was the result of personal knowledge and information from a reliable informant and another police officer, Detective A. Michael Scott.
The search warrant directed Officer Ward, or any other police officer, to search the premises known as "3615 Stockton St. (the entire 1st floor) for the following property, objects and/or persons: cocaine a Schedule II controlled substance, all paraphernalia used in the packaging and distribution of the controlled substance. Also any and all records pertaining to the distribution of this controlled substance."
Appellant moved to suppress the evidence found in the search. He argues that the premises searched is a unit of a multiple occupancy building, and neither the affidavit nor the search warrant properly described the premises to be searched.
At the suppression hearing, Ward testified that he was the affiant who procured the warrant to search the entire first floor of 3615 Stockton. He also participated in the search. He identified enlarged photographs of the appellant's apartment building. One of the photos shows the street numbers "3615" displayed on the building adjacent to the first-floor door, which is the entrance through which the officers entered the appellant's apartment to execute the search warrant. At this entrance door is a small stoop reached by three steps. A post attached to the stoop contained the number "7." The pictures also show that the numbers "6" and "8" had been placed at other doors through which entry could be made from outside the building. There *232 is no jointly used hallway inside the building with access to the various apartments. When the officers entered the apartment, Ward did not know the occupants' names, and appellant was not present when the search was conducted.
Officer Ward did not know that the building contained multiple units until after he had entered appellant's apartment. It appeared to him to be just "a medium sized home." He testified that he had been "given a description [by Detective Scott] of where to go in at, but [he] did not put that in the affidavit ... we were just told what door to go through." It was Ward's usual practice to obtain from the informants information identifying which entrance was nearest the drugs in order to prevent the contraband being disposed of before it could be reached. Thus, other doors were not significant to his entry and search.

I.
"Under the Constitution of the United States and the statutory law of Virginia it is essential to the validity of a search warrant that it describe with particularity the place to be searched." Manley v. Commonwealth, 211 Va. 146, 151, 176 S.E.2d 309, 314 (1970), cert. denied, 403 U.S. 936, 91 S.Ct. 2245, 29 L.Ed.2d 716 (1971). "All that is required, however, is that the description be such that the officer charged with executing the search warrant can, with reasonable effort, ascertain and identify the place intended." Id. While the general rule is that a search warrant directed against a multiple-occupancy structure is invalid if it fails to describe the particular sub-unit to be searched, there are exceptions to the general rule. For example, a warrant is valid if it provides the searching officers with sufficient information to identify, without confusion or excessive effort, the apartment unit intended to be searched. Id. at 151-52, 176 S.E.2d at 314.
In Brown v. Commonwealth, 212 Va. 672, 187 S.E.2d 160 (1972) (per curiam), the warrant described the premises to be searched as "a certain Three Story Rock Cement Dwelling" known as "5301-Huntington Ave., Newport News, Va." Id. at 673, 187 S.E.2d at 161. The affidavit contained reference to an "unnamed informer" who reported having seen marijuana prepared, dispensed and smoked "on the third floor" of the described premises. The officer who searched the "third floor" unit testified that he did not know the names of the occupants of the third floor unit but that he did know there was only one unit there. In a per curiam opinion, the Supreme Court affirmed Brown's conviction, holding that the warrant that identified the address met constitutional requirements where the affidavit indicated that the contraband had been observed on the third floor, which the officer knew to be a separate living unit. Id. at 674, 187 S.E.2d at 161.
In Robinson v. Commonwealth, 219 Va. 520, 248 S.E.2d 786 (1978) (per curiam), the issue was whether the search warrant described the premises to be searched with the particularity required by the Fourth Amendment. In affirming the trial court, the Supreme Court, in a per curiam opinion, stated:
The Fourth Amendment to the United States Constitution requires that a search warrant "particularly" describe the place to be searched. This requirement is met "if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." We have held that the same mandate of particularity of description and the same test of compliance are applicable under the Fourth Amendment and under the Virginia statutes.[1]
*233 Id. at 522-23, 248 S.E.2d at 788 (citations omitted).
In Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the search warrant described the place to be searched as the third floor apartment of a multiple unit building. There were multiple units in that building and more than one on the third floor. The Court upheld the validity of the search warrant, holding that police conduct must be judged in light of the information available to them at the time they acted. Id. at 85-86, 107 S.Ct. at 1017-18.
At Wilson's suppression hearing, Officer Ward testified that the informant had described the location of the door through which entry should be made. The informant had told Officer Ward that this was the door through which he had entered and observed the narcotics. Before procuring the search warrant, the police officers had gone to 3615 Stockton Street and had observed the door and confirmed that the numbers "3615" were posted next to the door that the informant had described. The search warrant, valid on its face, instructed the police to search the first floor of 3615 Stockton Street. The placement or presence of the street number gave Officer Ward no indication that more than one residential unit was located on the first floor. To Ward, the structure of the building appeared to be a "medium sized home," not an apartment building. Ward stated that in the past, the informant had given the police information that "always had proven true and reliable." It was not until after Officer Ward entered the premises and began the search that Ward learned the building contained more than one unit. The officers entered through the door that the informant had described, and the unit entered was the only unit searched. In the unit they entered, the police found contraband, as they had been told they would. In this instance, the police officers obtaining and executing the warrant to search Wilson's residence were sufficiently informed to identify correctly the premises to be searched, and the constitutional requirements were thereby satisfied. The description in the search warrant of the first floor of the residence at 3615 Stockton Street, together with the separate identification of which entrance to use, satisfied the Fourth Amendment requirements that the warrant must specifically identify the place to be searched in a multiple occupancy building.

II. Prior Offense Evidence

The Commonwealth, in order to convict appellant for having violated Code § 18.2-248, was required to prove beyond a reasonable doubt that appellant knowingly possessed cocaine with the intent to distribute it. In an effort to prove that Wilson intended to distribute the cocaine, the Commonwealth introduced the testimony of Charles Linderman, who testified that he had purchased cocaine from Wilson on two or three occasions at the same residence from which the cocaine in this prosecution was seized, the last purchase having been three weeks to a month before Wilson was arrested. Wilson argues that evidence that he sold cocaine to Linderman on previous occasions was not relevant to prove that the cocaine he later possessed was for sale, rather than for personal use. Moreover, the prejudicial effect of such evidence far outweighed any slight probative value which it may have had. We agree.
Evidence that shows or tends to show that the accused committed or was guilty of other crimes is not admissible for the purpose of proving that the accused committed or likely committed the particular crime charged. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). The rationale behind the rule is that evidence of other specific, similar bad acts does not logically support the inference that, because an accused previously committed a similar act, he has a propensity to commit bad acts of this nature and, therefore, he probably committed the bad act with which he stands charged. *234 Spence v. Commonwealth, 12 Va.App. 1040, 1045, 407 S.E.2d 916, 918 (1991); Sutphin v. Commonwealth, 1 Va.App. 241, 245, 337 S.E.2d 897, 899 (1985).
While there are many well established exceptions to the general rule of exclusion of other crimes evidence, none of them applies in the present case. As the Supreme Court stated in Kirkpatrick, evidence of other crimes may be admissible if introduced to prove an element of the offense charged, or to prove any number of relevant facts, such as motive, intent, agency, or knowledge. Other crimes evidence may also be admissible when the charged crime is part of a general scheme and proof of that fact is relevant to prove an element of the offense, or to prove or explain how the crime was accomplished. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805.
These exceptions to the general rule against admissibility are not, however, to be construed and applied so broadly that a court loses sight of the fact that other crimes evidence is, by its nature, highly prejudicial to an accused. Id. In order for evidence that the accused has committed other crimes to be admissible, it need only be relevant to prove a material fact or issue, and its relevance must outweigh the prejudice inherent in proving that an accused has committed other crimes. Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616, cert denied, 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235 (1990).
Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy. For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence.
Bunting v. Commonwealth, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967).
The Supreme Court has been particularly careful to recognize the danger of misusing other crimes evidence in drug-related charges. Evidence that an accused has committed or has been convicted of other drug-related crimes diverts the fact finder's attention from the facts and charges at issue. Also, such evidence calls upon an accused to defend himself against crimes not charged in the indictment. Proving that the accused has committed other similar crimes raises considerable risk that such evidence will be misapplied by the fact finder. Great likelihood exists that a fact finder will rush to the impermissible conclusion that, because the accused sold drugs on a prior occasion, he probably is the person who possessed the seized drugs and probably intended to sell those drugs in this instance, rather than use them. Furthermore, simply proving that an accused has on a prior occasion committed other crimes of a similar nature has a tendency to shift the burden of proof to an accused to prove his innocence, rather than requiring the Commonwealth to prove each element of the offense beyond a reasonable doubt. The other crimes evidence, in order to be admissible, must be sufficiently relevant or "so intimately connected and blended with the main facts ... that they cannot be departed from with propriety." Kirkpatrick, 211 Va. at 273, 176 S.E.2d at 806 (quoting Walker v. Commonwealth, 28 Va. (1 Leigh) 574, 576 (1829)).
In three cases, the Supreme Court has addressed the relevance and admissibility of prior drug-related offenses to prove an element or elements of the charged offense. See Boyd v. Commonwealth, 213 Va. 52, 53, 189 S.E.2d 359, 359-60 (1972) (per curiam); Eccles v. Commonwealth, 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973) (per curiam); Donahue v. Commonwealth, 225 Va. 145, 156, 300 S.E.2d 768, 774 (1983). The general principle stated in those cases is that prior sales of drugs does not, without more, tend to prove that an accused on another unrelated occasion intended to possess or sell drugs. Evidence of prior drug-related conduct is irrelevant and inadmissible and does not fall within one of the Kirkpatrick exceptions where there has been no showing of an intimate relation or connection between the prior conduct and *235 an element of the crime charged. Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805.
In Boyd, the defendant was charged with possession and distribution of heroin after he sold two capsules of the drug to an undercover police officer. At trial, the police officer testified that he had seen the defendant make two similar drug sales a few days before making the sale to him. The trial judge instructed the jury that it could only consider the evidence of the prior sales "as bearing on the issue of whether the prior offenses constituted part of a general scheme," of which the crime charged was a part. Boyd, 213 Va. at 53, 189 S.E.2d at 359. On appeal, the Supreme Court held that the evidence of the two prior sales was inadmissible to prove a general scheme under one of the Kirkpatrick exceptions. The Court held that the prior sales were not shown to have been sufficiently related to the charged crime so that the fact finder could infer that the last sale had occurred because it was part of a general scheme to sell drugs. "The prior sales of heroin were unrelated to the October 26 sale. Hence, the evidence concerning the prior sales does not fall within an exception to the general rule. Its prejudicial effect outweighed its probative value." Id. at 53, 189 S.E.2d at 360.
In Eccles, the trial judge admitted evidence that the defendant had previously used marijuana in order to prove his familiarity with the drug and, thereby to establish that he knew the nature of the transaction in which he was participating was a sale of marijuana. Relying upon Boyd, the Supreme Court held that evidence that the defendant had previously used marijuana was inadmissible to prove that because he was familiar with it, he knew that the substance he possessed was the illicit drug. However, the defendant's prior marijuana use was not sufficiently related to the sale of marijuana to have probative value, and whatever slight probative value it may have had was outweighed by its prejudicial effect. Eccles, 214 Va. at 22, 197 S.E.2d at 333.
Finally, in Donahue, the Supreme Court held, on facts very similar to those of the present case, that evidence of a prior conviction for an unrelated drug sale was inadmissible to prove that the defendant possessed drugs on a later occasion with the intent to distribute them. The trial judge in Donahue had given a limiting instruction telling the jury that they could only consider the prior sales to prove intent to distribute by negating that she might not have known of the nature or presence of the substance or might have had no intent to distribute. Relying on Boyd and Eccles, the Supreme Court reiterated that none of the Kirkpatrick exceptions applied. The Court also emphasized that the prejudicial effect of introducing evidence that the accused on prior occasions had sold drugs outweighed its probative value to prove that the defendant possessed the drug with the intent to distribute it. Donahue, 225 Va. at 156, 300 S.E.2d at 774.
The evidence that Wilson previously sold cocaine to Linderman on two or three occasions, three weeks to a month before the charged offense, cannot be rationally distinguished from the other drug crimes evidence that the Supreme Court held to be inadmissible in Boyd, Eccles, and Donahue. The prior drug sales by Wilson to Linderman were not shown to have been related to Wilson's possession of cocaine at the time of the subject offense to prove that he was the person who possessed the cocaine or that he intended to sell the drug, rather than personally use it. Evidence that Wilson had sold Linderman cocaine three weeks earlier improperly suggested that Wilson was a person with a propensity to sell drugs and invited the fact finder to conclude that he possessed the cocaine and that it was for distribution, not personal use. Consequently, the prejudicial effect of the evidence far outweighed any probative value that it may have.
Furthermore, although this was a bench trial, when the trial judge erroneously and unconditionally admits prejudicial evidence, we cannot presume that the trial judge disregarded that evidence which he ruled to have probative value. Jones v. Commonwealth, 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978). While a judge is *236 uniquely qualified by training, education and experience to disregard potentially prejudicial aspects of inadmissible evidence in the ultimate adjudication of the issue, Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981), we cannot assume that the judge has done so where the judge's rulings indicate otherwise. Hall v. Commonwealth, 14 Va.App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc). Although there was evidence of quantity and drug packaging paraphernalia from which the trial judge could have found that Wilson intended to sell the drugs, there was also evidence of razor blades on which was found cocaine residue and other items that could be considered equally consistent with personal use. There was evidence that another person other than Wilson occupied the apartment. Thus, without the evidence that Wilson previously had sold drugs to Linderman on other occasions, we cannot say that it plainly appears from the evidence that the trial judge would have ruled the same. Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc); cf. Cole v. Commonwealth, ___ Va.App. ___, 428 S.E.2d 303 (1993). Thus, the error was not harmless. Accordingly, we reverse the appellant's conviction.
Because we reverse the conviction and remand the case for such further action as the Commonwealth may be so advised, we do not address whether the evidence was sufficient to support the conviction.
Reversed and remanded.
BAKER, Judge, dissenting.
I agree with the majority's finding that the trial court did not err when it denied appellant's motion to suppress the evidence. I also would hold that the evidence was sufficient to affirm his conviction. I respectfully disagree with the majority's finding that they "agree" with appellant's argument that the "prior sales" evidence was of only "slight probative value" requiring that we hold that the trial court committed reversible error in admitting that evidence at appellant's trial.
With regard to whether the probative value outweighed the prejudice, "[t]he responsibility for balancing these competing considerations is largely within the sound discretion of the trial court." Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). The generally recognized test is whether "the legitimate probative value outweighs the incidental prejudice to the accused." Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984). The majority holds, as a matter of law under the facts of this case, that the trial court abused its discretion. I respectfully cannot join in that decision.
The majority relies on Donahue v. Commonwealth, 225 Va. 145, 300 S.E.2d 768 (1983); Eccles v. Commonwealth, 214 Va. 20, 197 S.E.2d 332 (1973); and Boyd v. Commonwealth, 213 Va. 52, 189 S.E.2d 359 (1972).
To determine why the Supreme Court of Virginia held that prior convictions evidence was improperly admitted in Boyd, Eccles and Donahue, we need only to examine the facts of those cases.
In Boyd, the trial court instructed the jury that prior sales "may be considered by the jury as bearing on the issue of whether the prior offenses constituted part of a general scheme, of which the crime charged is a part." Boyd, 213 Va. at 53, 189 S.E.2d at 359. This clearly was error. There was no evidence that a "common scheme" was involved and the prior offenses were not offered to show knowledge or intent.
In Eccles, the defendant, charged with selling marijuana, denied knowledge that two of his acquaintances sold the marijuana to an undercover agent. There was no direct evidence that Eccles knew of or was involved in the sale. After permitting the agent to show that on two other occasions he had observed Eccles "smoking marijuana," the trial court instructed the jury that evidence "should be considered ... only insofar as it might be evidence showing a knowledge of `this particular transaction....'" Eccles, 214 Va. at 22, 197 S.E.2d at 333 (emphasis added). Obviously, whether Eccles smoked marijuana did not *237 tend to prove Eccles' knowledge that two of his friends sold marijuana to the undercover agent.
Donahue presented a similar, but not identical, issue to one before us. Donahue, however, did not deny that he knowingly possessed the drugs. He contended only that he did not intend to sell them. In addition, the evidence used against Donahue was of prior convictions for drug sales.
Here, in his defense, appellant sought to prove that he did not know the cocaine was present in his residence and contended that it may have belonged to other persons who resided there. The Commonwealth was permitted to show by Linderman that on at least two recent occasions he had purchased the same type drug (cocaine) from appellant at this address. The issues were whether appellant knowingly possessed cocaine and whether he possessed it with the intent to distribute. The prior sales by appellant from the same place to the same person were not unrelated to the issue of appellant's knowledge of the presence and character of the drug. This evidence related to appellant's prior activities in this same residence in which the cocaine was seized that gave rise to his conviction for which he now appeals. The evidence admitted here did not show, as it did in Donahue, that appellant had been convicted of prior crimes, but, rather, only that his prior conduct was inconsistent with his claim that he did not know the cocaine was present in his residence. This evidence did not carry the same degree of prejudice as the evidence introduced in Donahue. The balancing of probative value against potential prejudice is clearly a matter for the exercise of sound discretion by the trial court. I believe that the evidence of appellant's prior conduct, which obviously led to the charge for which he was on trial, was properly admitted to show that knowledge of the existence of the cocaine, even though it tended to show that he may have been guilty of other crimes. See Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 577 (1984). I would hold that Donahue does not require that we hold as a matter of law that the trial court wrongfully erred in finding that the probative value of the evidence outweighed any incidental prejudice.
In Cheng v. Commonwealth, 240 Va. 26, 393 S.E.2d 599 (1990), the Supreme Court held that "every fact, however remote or insignificant, that tends to establish a probability or improbability of a fact in issue is admissible." Id. at 39, 393 S.E.2d at 606 (citation omitted). In Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609, cert. denied, 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235 (1990), the Court expressly stated that "[e]vidence of other crimes is admissible if it tends to prove any fact in issue, even though it also tends to show the defendant guilty of another crime." Id. at 89, 393 S.E.2d at 616 (citations omitted). I acknowledge that whether other crimes evidence is admissible is subject to the test of whether its legitimate probative value outweighs the incidental prejudice to the accused. But the test to be employed on appeal is whether, as a matter of law, the trial court abused its discretion in finding that the probative value of the evidence outweighed the prejudice to the accused. In determining whether abuse of discretion has occurred, we must be mindful of the admonishment of the Supreme Court in Scott, 228 Va. at 526-27, 323 S.E.2d at 577:
[W]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial. ... Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, plan or scheme, or any other relevant element of the offense on trial ...

* * * * * *
... If the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant *238 guilty of another crime (underscoring supplied) (citations omitted).
See also Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988), cert. denied, 490 U.S. 1009, 109 S.Ct. 1649, 104 L.Ed.2d 163 (1989).
In Ferrell v. Commonwealth, 11 Va. App. 380, 399 S.E.2d 614 (1990), this Court held:
Whenever guilty knowledge is an essential element of the offense charged, evidence is admissible which tends to establish that knowledge, notwithstanding that it proves or tends to prove an offense other than that charged. In such cases the general rule "must yield to what has come to be known as the `guilty knowledge exception.'" Moreover, "if the evidence of other conduct is connected with the present offense, or tends to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the defendant guilty of another crime." Every fact, however remote or insignificant, that tends to establish a probability or improbability (e.g., appellant's defense of lack of knowledge) of a fact in issue is admissible. Here, the evidence admitted at trial was clearly admissible to rebut appellant's denial of knowledge that the property found in his possession and under his control was stolen.
Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, plan or scheme, or any other relevant element of the offense.
Id. at 388-89, 399 S.E.2d at 619 (emphasis added) (citations omitted). Ferrell's application for a rehearing en banc to this Court was denied and his petition for an appeal to the Supreme Court of Virginia was refused on its merits.
In Devine v. Commonwealth, 107 Va. 860, 60 S.E. 37 (1908), the defendant was accused of selling without a license an "ardent spirit" that would produce intoxication. Evidence that the defendant had sold, but had not been convicted of selling, the same liquid to others over a period of two years was held admissible to show that the product would produce intoxication.
For the reasons stated, I would affirm the judgment of the trial court.

Upon a Petition for Rehearing En Banc

Before the Full Court
On April 20, 1993 came the appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on April 6, 1993 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on April 6, 1993 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[1] The Court cited cases from other states holding that errors in the description of the premises to be searched will not invalidate a search warrant if there is sufficient information provided to lead the officer to the correct address. See State v. Reynolds, 11 Ariz.App. 532, 536, 466 P.2d 405, 409 (1970) (where the premises were described as 1821 East Almeria and the correct address was 1821 East Amelia); State v. Bisaccia, 58 N.J. 586, 592, 279 A.2d 675, 678 (1971) (where the premises were described as 371 and the correct number was 375); United States v. DePugh, 452 F.2d 915, 920 (10th Cir.1971), cert. denied, 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972); McCormick v. State, 169 Tex.Crim. 53, 54, 331 S.W.2d 307, 308 (1960); United States v. Goodman, 312 F.Supp. 556, 558 (N.D.Ind.1970); People v. Watson, 26 Ill.2d 203, 205-06, 186 N.E.2d 326, 327-28 (1962).