*669 ELDER, Judge, with whom BENTON, Judge, joins,
dissenting.
I disagree that the officers who detained White had an articulable, reasonable suspicion that “White was a member of the group” that drew the officers’ attention. The testimony-given at the suppression hearing indicates that, at the time Officers Soyers and Riley approached White on the steps, the officers could only speculate that White was associated with the group of men they had observed near the street.
I would hold that the initial stop of White by Officers Soyers and Riley was unlawful and that references to the evidence obtained from it, a stocking cap and $581 in cash, should have been suppressed. I would also hold that Officer Nesselroade’s subsequent arrest of White, though based on probable cause, was made possible by the initial illegal seizure and that references to the pager obtained during the search incident to this arrest should have been excluded under the “fruit of the poisonous tree” doctrine. Finally, I would hold that the erroneous admission of this evidence was not harmless.
I.
First, I would hold that the initial Terry stop of White was illegal and that the evidence acquired from it should have been suppressed. Only Officers Nesselroade and Soyers testified at the suppression hearing. Their testimony indicates that the three officers drove toward a group of males congregated in a semicircle on property adjacent to a street. The officers heard someone yell a slang term for “police” and watched as the group quickly dispersed. The officers pulled over to the curb and pursued on foot various members of the group. Officer Soyers testified that he saw members of the group run behind the residence and that he and Officer Riley followed them. Officer Soyers testified that when he and Officer Riley arrived behind the residence, they noticed White “sitting on some steps.” Officer Soyers testified that he knew White from previous encounters. The two officers “had [White] stand up and patted him down for weapons.” At some point *670 during the seizure of White behind the house, the officers recovered the stocking cap filled with cash. Although Officer Nesselroade testified that he recognized White and saw him drop “a large white piece of something” onto the ground as he ran from the street, Officer Soyers testified that “Officer Nesselroade never gave [him] any information” before he and Officer Riley seized White. No testimony established that Officers Soyers and Riley saw White run from the scene.
Based on these circumstances, I would hold that Officers Soyers and Riley lacked a reasonable, articulable suspicion that White had been engaged in criminal activity. Nothing known to the officers at the time they seized White distinguished him from a neighborhood resident who was merely sitting behind a residence. Officer Soyers did not testify that he saw White among the group of individuals congregated near the street, and nothing in his testimony indicated an articulable basis for his belief that White was a member of the group. Instead, Officer Soyers testified that he noticed White on the back steps, recognized him from previous encounters, and decided with Officer Riley to stop and frisk him. Based on these facts, I would hold that the decision to seize White was founded on nothing more than a hunch.
The majority places great weight on the date and time the seizure occurred and on White’s proximity to the street where Officers Soyers and Riley had observed the group. It implies that, based on these facts, the officers could reasonably exclude the likelihood that White was a resident or visitor of the house who was innocently sitting on the steps. However, the mere fact that an officer pursuing unknown members of a group encounters a person sitting behind a nearby residence during the nighttime in December does not justify that officer’s suspicion that the person behind the residence was a member of the group. Application of this reasoning would allow police to conduct sweep searches of residential neighborhoods when looking for a fleeing suspect during the nighttime hours of the winter months. Without more information linking White to the group, I would hold that Officers Soyers and Riley lacked articulable, reasonable suspicion required to stop *671 and frisk White. Thus, I would hold that the trial court erred when it admitted references to the stocking cap and money taken from White during this unlawful activity.
II.
I would also hold that the reference to the pager found on White’s person after he was arrested by Officer Nesselroade should have been suppressed because it was “fruit of the poisonous tree.” See Walls v. Commonwealth, 2 Va.App. 639, 651-52, 347 S.E.2d 175, 182 (1986). The record indicates that after Officer Nesselroade overheard the other officers’ request for a warrant check, he radioed the officers to bring White to him. Officer Nesselroade then arrested White and searched him. During the search, Officer Nesselroade recovered a pager. Although White’s pager was obtained during a search incident to arrest, White’s arrest was the direct “fruit” of his unlawful seizure by Officers Soyers and Riley. Thus, the pager should have been excluded because its discovery resulted from “the unlawful act,” Warlick v. Commonwealth, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974), and because it was not obtained “by means sufficiently distinguishable to be purged of the primary taint.” Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).
III.
Finally, I would hold that the erroneous admission of the evidence regarding the cash and the pager was not harmless beyond a reasonable doubt. See Lavinder v. Commonwealth, 12 Va.App. 1003,1005, 407 S.E.2d 910, 911 (1991) (holding that constitutional error must be harmless beyond a reasonable doubt). Without this evidence, the remaining proof of White’s intention to distribute cocaine is less than overwhelming. First, the amount of crack cocaine possessed by White was relatively small, only 1.54 grams. See Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 384 (1984) (stating that a “relatively small quantity of [drugs] in the defendant’s possession warrants the inference that it was for [the defendant’s] personal use”). In addition, the record indicates that *672 an electronic scale and “crack shavings” were found in White’s car at the scene. However, the record does not conclusively prove that White either owned or used the scale. The Commonwealth did not introduce evidence of White’s fingerprints on the scale, and White said in his post-arrest statement to Officer Nesselroade that the scale belonged to someone else. Based on this evidence, a reasonable fact finder could have concluded that the scale belonged to one of the other individuals who fled the scene when the officers appeared.
The remaining evidence of White’s intent to distribute cocaine was his post-arrest statement to Officer Nesselroade that he knew the techniques of weighing crack cocaine and that he was familiar -with its current market price. However, a reasonable fact finder could have concluded that White had obtained this knowledge through his experience as a buyer of crack cocaine rather than as a seller. See Wilson v. Commonwealth, 16 Va.App. 213, 223-24, 429 S.E.2d 229, 235-36 (1993), aff'd en banc, 17 Va.App. 248, 436 S.E.2d 193 (1993) (holding that non-constitutional error was not harmless when evidence regarding intent to distribute cocaine supported the conclusion that the defendant was only a user of the drug).
For the foregoing reasons, I respectfully dissent.