COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


FABIAN FERNANDO LAWRENCE
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1646-08-2                         JUDGE LARRY G. ELDER
                                                         SEPTEMBER 29, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                     John Richard Alderman, Jr., Judge Designate

            Timothy W. Barbrow (Law Office of Timothy W. Barbrow, on
            brief), for appellant.

            Richard B. Smith, Special Assistant Attorney General (William C.
            Mims, Attorney General, on brief), for appellee.


        Fabian Fernando Lawrence (appellant) appeals from his bench trial conviction for

possessing cocaine.  On appeal, he contends the trial court erred in allowing the Commonwealth,

while cross-examining him, to elicit evidence about the nature of his prior conviction—which

was for robbery—rather than simply the fact that he had previously been convicted of one

felony.  The Commonwealth concedes on appeal this was error but contends the error was

harmless.  We hold the error was not harmless on the facts of this case.  Thus, we reverse

appellant's conviction and remand for a new trial if the Commonwealth be so advised.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## BACKGROUND

On the evening of February 2, 2006, Police Sergeant Reed stopped the van appellant was driving for defective equipment, an inoperable brake light. Appellant was alone in the vehicle. On the floor of the van, Sergeant Reed observed a "new and unused glass smoking device," which he knew was commonly used to smoke crack cocaine. He also observed two or three used pieces of "brass Chore Boy," a type of cleaning pad sold as a "pot scrubber," that were "burnt black with the [white ash] residue that's consistent with the smoking of crack cocaine." When Sergeant Reed asked appellant about these items, he said "he had removed them from his house," that "they weren't his; he was taking them to the trash" "because his wife had a drug problem" and "he wanted to get rid of them." Sergeant Reed subsequently "checked the area . . . better" and "recovered nineteen to twenty pieces of the Chore Boy[s] that were used, that had fallen out of a bag and scattered the[m]sel[ves] between the seat and up towards the front console of the vehicle." Subsequent laboratory analysis confirmed the residue was cocaine.

At some point after the stop of February 2, 2006, appellant "showed up at the police department with his wife." In April 2006, appellant was indicted for the instant offense. In May 2006, appellant appeared in court with his attorney, and trial was set for August 2, 2006. Appellant failed to appear for trial on August 2, 2006, and at some point Sergeant Reed learned he was incarcerated in Maryland and attempted to extradite him.

On January 4, 2008, Judge John W. Scott conducted a video arraignment of appellant, who the prosecutor represented was "currently an inmate in the custody of the State of Maryland, who's filed under the IAD for speedy trial here in Virginia."

A bench trial was held before Judge Scott on March 14, 2008, at which Sergeant Reed testified about his traffic stop of appellant, what he saw in the van appellant was driving, and

what appellant told him about the drug paraphernalia in the van. Reed said appellant told him "that he had removed [the pieces of screen] from his house," that "they weren't his," and that "he was taking them to the trash." Sergeant Reed gave no specific testimony at that time about whether appellant indicated knowing what the Chore Boy screens were used for or admitted that he knew they contained cocaine residue.

Appellant testified in his defense, indicating that he had removed the pieces of Chore Boy that morning from the house he and his wife shared with their four children. He said he had suspected she might be using drugs because she was not eating much, "would just be up all day, all night," was neglecting her household duties, and would sometimes lock their bedroom door and refuse to let him inside the room immediately. The morning before the traffic stop, before appellant left for work and while his wife was still sleeping, he searched her dresser drawer and found the screens. He said he did not know what they were and "[did not] know . . . they contained [drug residue]," but he suspected they had something to do with drug use. He then said "Yes," in response to the question whether he knew when he took the screens out of the house that morning that they contained "cocaine residue," but on further questioning he again said he knew they contained drug residue but that "[he] didn't know what drug[] was on [the screens]." He added the screens to the trash bag he was already planning to take to the dump. He said the dump had not yet opened that morning as he was on his way to work and that he stopped after work to visit a friend and forgot he had them in the van. He said he was "suspicious" about the screens and "confirmed it when [Sergeant] Reed pulled [him] over and confirmed and told [him] what they were." He denied knowing anything about the glass smoking device, saying Sergeant Reed found it beneath the driver's seat of the van, which was the only vehicle the couple owned and was registered in his wife's name.

Appellant testified on direct examination that he had one prior felony conviction. On cross-examination, the prosecutor inquired, "What is the nature of that felony?" His attorney objected and said, "I don't know that that's proper cross-examination." The prosecutor said, "Number and nature for defendants, Judge." The judge said, "It's proper. Objection overruled." Appellant then testified that the felony for which he had been convicted was robbery.

Appellant's wife testified that the Chore Boy screens were hers. She said she had had a drug problem before she married appellant and that he knew of her history but that she had been clean and sober for fifteen years. She testified that "[t]here came a time when [appellant] had been incarcerated . . . due to a mistake in identity" and that, during that time, she was the sole provider. She said they lost the family home and that she had a relapse and started smoking crack cocaine. Appellant had been out of jail for approximately a week before February 2, 2006, the date of his traffic stop. She said that when she arose the morning of appellant's traffic stop, she could tell he had been through her belongings and removed her drug paraphernalia, including the Chore Boy screens. Appellant's wife admitted she was incarcerated at the time she testified and that she had approximately ten prior felony convictions and some misdemeanor convictions involving theft.

The Commonwealth called Sergeant Reed in rebuttal and elicited additional testimony concerning what Reed said to appellant in reference to the pieces of Chore Boy screens. Reed testified that when he said, "I know what this is used for," and asked "[W]hy is it in your vehicle," appellant responded "he had removed it from the house and was going to throw it away because his wife had a drug problem." Reed testified appellant did *not* say he did not know what the items were. However, Reed also gave no testimony concerning whether appellant indicated knowing what drug was on the screens.

The trial court found appellant guilty of the charged offense, indicating it did so "after considering all of the evidence in this matter, including . . . your testimony and . . . your wife's." The trial court sentenced appellant to three years with all three years suspended on certain conditions, including active supervised probation for an indefinite period.

II.

ANALYSIS

"A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit." Code § 19.2-269. Under settled principles, "the Commonwealth may ask a defendant who testifies in a criminal proceeding the number of times he has been convicted of a felony, *but . . . not the names of the felonies, other than perjury, and not the nature or details thereof*." Sadoski v. Commonwealth, 219 Va. 1069, 1071, 254 S.E.2d 100, 101 (1979) (emphasis added). Thus, here, as the Commonwealth concedes, the trial court erred in allowing the prosecutor to inquire about the nature of appellant's prior conviction, which was for robbery.

Nevertheless, the Commonwealth, citing Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993), contends the error was harmless because "'the record is devoid of . . . implications'" "'that the judge considered [the] inadmissible evidence in adjudicating the merits of the case'" and, thus, we "'must presume [on appeal] that the trial judge considered the evidence for the limited purpose of assessing credibility.'" We hold this case is readily distinguishable from Cole, and we are unable to conclude the error here was harmless.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not
> influence the [fact finder], or had but slight effect, . . . the

judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . .  If so, or if one is left in grave doubt, the [judgment] cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566 (1946)); see also Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (discussing harmless error analysis prior to Supreme Court's adoption of Kotteakos test in Clay).

"'[H]armless error analysis . . . [is not] simply a sufficiency of the evidence analysis.'"[1] Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (en banc) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992)).  We may uphold a decision on the ground that any error involved is harmless only if we can conclude, without usurping the trial court's fact-finding function, "'that the error did not influence the [fact finder], or had but slight effect.'"  Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566); see Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911 (noting a court may not declare an error harmless if doing so requires "usurping the [fact finder's] function").

It is well settled under this test that the erroneous admission of evidence may be harmless if evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict."  United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248, 90 L. Ed. at 1567); see also Rose v.

_____

[1] We note the sufficiency of the evidence to support appellant's conviction is not before us in this appeal.  Appellant's assignment of error challenging the sufficiency was denied at the petition stage.

Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005). The erroneous admission of evidence also is harmless if the evidence admitted in error is merely "cumulative" of other, undisputed evidence. Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353, 373-74 (1993).

As we noted in Cole, "'[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.'" Cole, 16 Va. App. at 116, 428 S.E.2d at 305 (quoting Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)). "Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence . . . 'in the absence of clear evidence to the contrary'" in the record. Id. (quoting Hall v. Commonwealth, 14 Va. App. 898, 902, 421 S.E.2d 455, 462 (1992) (en banc)). However, *even in a bench trial, "when the trial judge erroneously and unconditionally admits prejudicial evidence, we cannot presume that the trial judge disregarded the evidence he ruled to have probative value*." Wilson v. Commonwealth, 16 Va. App. 213, 223, 429 S.E.2d 229, 235 (emphasis added), aff'd on reh'g en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993); see Pierce v. Commonwealth, 50 Va. App. 609, 617 n.4, 652 S.E.2d 785, 790 n.4 (2007) (quoting Wilson, 16 Va. App. at 223, 652 S.E.2d at 235). Instead, we must presume, unless that presumption is rebutted, "that by admitting inadmissible evidence, the trial judge implicitly considered that evidence for an improper purpose." Pierce, 50 Va. App. at 617 n.4, 652 S.E.2d at 790 n.4.

In Pierce, we held that the presumption is rebutted when "a judge clearly articulates the reasons for his decision, and the improper evidence is not among those reasons," making "clear that the improper evidence did not impact the verdict." Id. In Pierce, the trial judge stated "it

was the testimony of another witness that convinced him that [the defendant, who did not testify,] was guilty of possession with intent to distribute." Id. at 618, 652 S.E.2d at 790.

Here, by contrast, the trial court expressly stated it considered the testimony of appellant in convicting him. If the trial court had believed appellant's testimony that he possessed the pieces of Chore Boy screens only for the purpose of disposing of them and with only an unconfirmed suspicion about the nature of the residue on the screens, it could have found him not guilty of the charged offense of possessing cocaine. See, e.g., Young v. Commonwealth, 275 Va. 587, 591-92, 659 S.E.2d 308, 310-11 (2008) (refining the requirement that a conviction for possessing a controlled substance requires proof, *inter alia*, that "'the defendant intentionally and consciously possessed [the drug] *with knowledge of its nature and character*'" (quoting Burton v. Commonwealth, 215 Va. 711, 713, 213 S.E.2d 757, 759 (1975)) (emphasis added in Young)). On this record, therefore, it is impossible to determine that the trial court's erroneous admission of evidence of the nature of appellant's prior conviction for robbery was limited to credibility and was harmless. Robbery, in addition to being a felony, is a crime of moral turpitude. It is also the sort of crime often associated with drug addicts, who require funds to support their habits. Thus, the admission of evidence of the nature of appellant's conviction had the potential for creating prejudice far beyond that resulting from the fact that the trial court knew as a result of the prior video arraignment that appellant was then incarcerated in another jurisdiction for an unknown offense. Because the trial court admitted the evidence of the nature of appellant's robbery conviction without limitation, we cannot conclude, without usurping the trial court's fact finding function, that the erroneous admission of this evidence was harmless.

III.

For these reasons, we hold the trial court's erroneous admission of evidence of the nature of appellant's prior conviction, for robbery, was not harmless. Thus, we reverse appellant's conviction and remand for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>