COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges McCullough and Huff
Argued at Alexandria, Virginia


KEVIN JACK JOHNSON

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 1595-11-4          CHIEF JUDGE WALTER S. FELTON, JR.
                                                        JULY 24, 2012
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                             Charles S. Sharp, Judge

             Edith M. Min (Eugene Frost; Mell & Frost, PC, on brief), for
             appellant.

             Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
             Cuccinelli, II, Attorney General, on brief), for appellee.


       Kevin Jack Johnson ("appellant") appeals from his conviction for larceny, third or

subsequent offense, in violation of Code § 18.2-104, following a jury trial in the Circuit Court of

Stafford County ("trial court").  Appellant asserts the trial court erred by admitting evidence of other

uncharged crimes, contending that the evidence was not relevant to prove his lack of mistake,

*modus operandi*, or common scheme related to the charged offense and that the prejudicial impact

of the evidence outweighed its probative value.[1]

_____

          [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

          [1] Appellant asserted in his opening brief that the trial court erred in overruling his motion
to strike the Commonwealth's evidence because the evidence was insufficient to sustain his
conviction for larceny, third or subsequent offense.  The Commonwealth asserted in its brief, and
appellant conceded at oral argument, that he failed to preserve this assignment of error for appeal.
Oral Argument at 13:07 to 13:17; see Rule 5A:18 ("No ruling of the trial court . . . will be
considered as a basis for reversal unless an objection was stated with reasonable certainty at the time
of the ruling . . . .").  Accordingly, we will not address appellant's assertion that the trial court erred
in overruling his motion to strike the Commonwealth's evidence.

I.  BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below."  Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).  So viewed, the evidence presented at trial showed that in April 2009, appellant, Marcus Russell, and United States Marine Corps Staff Sergeant Brent Michaels lived together at 542 Widewater Road ("the Widewater property") in Stafford County, Virginia.  At the time, Staff Sgt. Michaels was stationed at Marine Corps Base Quantico ("Quantico").  Staff Sgt. Michaels owned a Chevrolet Tahoe that had affixed to its windshield a Department of Defense ("DOD") identification sticker which permitted that vehicle to enter Quantico.  Appellant frequently drove Staff Sgt. Michaels' Tahoe.

In April 2009, Joshua Bauer, a supply officer in the U.S. Marine Corps, was attending officer training school at Quantico.  While stationed there, Bauer stored his customized black Ford Mustang ("the Mustang") in a parking lot on the base.[2]  Bauer saw the Mustang on April 1, 2009 during "an officer end of the day walk through of the parking lot."  On April 5, 2009, Bauer returned to the lot to check on the Mustang and discovered that it and the trailer were not in the designated parking space.  Bauer reported to law enforcement authorities that the Mustang and trailer were missing.

Around 9:00 p.m. on the evening of April 4, 2009, the day before Bauer discovered his Mustang was missing, Russell saw appellant drive Staff Sgt. Michaels' Chevrolet Tahoe onto the Widewater property.  Appellant was alone in the Tahoe, which was towing a trailer with a black Mustang on top of it.  Russell, a vehicle repairman, described the Mustang as "very modified" and

---

[2] The Mustang sat atop a trailer, which was also owned by Bauer.

"something that you don't see every day. It's something that you might see on [television] or at the track."[3]

Appellant told Russell that he had the Mustang to "tun[e]" it up for someone. However, several days after appellant brought the Mustang onto the Widewater property, Russell observed that appellant was "taking [the car] apart" and that "half the car ended up in the shed." Appellant removed "the front [of the Mustang], engine parts, the turbo, the innercooler, the wheels," and replaced the rims. He "completely . . . stripped" the Mustang, and placed the parts he removed in a shed on the property. He also obscured from view the vehicle identification number ("VIN") located at the base of the windshield by placing a sheet of paper on top of it. Russell became suspicious about appellant's purpose for the vehicle because the car "was just blatantly being taken apart" and "that's not the way you tune up a car or you adjust anything." In May 2009, Russell contacted the Stafford County Sheriff's Department to report his suspicions concerning appellant's handling of the Mustang from the time appellant brought it to the Widewater property on the night of April 4, 2009.

On May 27, 2009, sheriff's department investigators executed a search warrant at the Widewater property, where they found the Mustang and trailer.[4] They located some of the

---

[3] Appellant, Russell, and Staff Sgt. Michaels were skilled in vehicle and motorcycle repair. From October 2008 to January 2009, appellant and Russell operated a vehicle repair business together at a used car dealership, where appellant had been employed prior to starting the business with Russell. Their partnership "sour[ed]" and dissolved in January 2009. After the partnership dissolved, Russell operated the repair business by himself at the used car dealership, while appellant began repairing motorcycles at the Widewater property. The parties disputed ownership of some of the tools left at Russell's repair shop; however, in spite of their ongoing dispute, they continued to reside together at the Widewater property.

[4] The investigators noted that the VIN on the Mustang was covered with a piece of paper. They confirmed that the VIN on the Mustang matched the number for the Mustang Bauer had reported as missing. At trial, Bauer identified the trailer, the Mustang, and all of the parts recovered by law enforcement as his property. Bauer testified he did not know Staff Sgt. Michaels or appellant and that he did not give either man permission to take his vehicle or trailer.

- 3 -

Mustang's parts in a shed on the property, and found other parts from the Mustang, including custom seats, in appellant's home office on the Widewater property. A review of appellant's eBay account revealed that he sold a Corbeau seat bracket, matching the one removed from Bauer's Mustang, for $122.50.

Officers also located two other vehicles possessed by appellant. The VIN on each of those vehicles was covered by a sheet of paper.[5] A subsequent check of the VINs revealed that both vehicles had been reported stolen.[6]

Appellant testified in his defense, asserting that Staff Sgt. Michaels alone brought the Mustang and trailer to the Widewater property.[7] Appellant conceded that he sold one of the Mustang's seat brackets on eBay, but denied knowing the vehicle was stolen. He explained that Staff Sgt. Michaels gave him the custom seats from the Mustang as payment for any future work he might perform on the car for Staff Sgt. Michaels and that he and Staff Sgt. Michaels shared the office space where the seats were found. He admitted that he drove Staff Sgt. Michaels' Tahoe "at times," but denied that the DOD sticker on Staff Sgt. Michaels' truck gave him access to the

---

[5] The first vehicle, a late model Mercury Grand Marquis ("the Grand Marquis"), was located at the Widewater property. Russell saw appellant drive the Grand Marquis to the Widewater property one night, but did not know how or when appellant acquired the Grand Marquis.

The second vehicle, a Honda Accord ("the Accord"), was located at the car dealership where appellant and Russell previously operated their repair business together. During the tenure of Russell's and appellant's business partnership, appellant "had the [ignition] key" for the Accord and would occasionally start it to charge the battery. When the partnership dissolved, the Accord remained at the dealership.

[6] Appellant objected to all testimony and evidence related to the stolen Grand Marquis and Accord, arguing that the Commonwealth's only reason for introducing the evidence was to show appellant's propensity to steal cars. The Commonwealth asserted that the evidence concerning the Accord and Grand Marquis was relevant to show appellant's knowledge that the Mustang was stolen and appellant's lack of mistake about the Mustang's status as a stolen vehicle. The trial court overruled appellant's objections and admitted the evidence.

[7] Similarly, appellant's ex-girlfriend and mother of his child testified that Staff Sgt. Michaels alone towed the Mustang and trailer onto the Widewater property.

Quantico base. He testified he did not have any knowledge as to how the VIN on the Mustang came to be covered.[8]

By its verdict, the jury credited the Commonwealth's evidence and rejected appellant's testimony as incredible. It convicted appellant of larceny, third or subsequent offense, in violation of Code § 18.2-104, and fixed his sentence at two years and six months' imprisonment. The trial court thereafter imposed the sentence fixed by the jury, and further sentenced appellant to an additional term of two years, pursuant to Code § 19.2-295.2, suspended upon successful completion of two years' post-release supervision.

## II. ANALYSIS

"In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2, 653 S.E.2d 600, 603 n.2 (2007) (quoting Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (citations omitted)). This approach encourages "'judicial self-restraint'" by avoiding the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court. Cooper v. Commonwealth, 54 Va. App. 558, 566, 680 S.E.2d 361, 365 (2009) (quoting Craddock v. Commonwealth, 40 Va. App. 539, 551 n.1, 580 S.E.2d 454, 461 n.1 (2003)).

On appeal, appellant asserts that the trial court abused its discretion by admitting evidence of the stolen Grand Marquis, located at the Widewater property where the stolen Mustang was found, and the stolen Accord, located at the used car dealership where he and Russell previously operated their repair business together. He contends that evidence was not relevant to prove lack of mistake,

---

[8] Appellant denied bringing the Grand Marquis to the Widewater property, and testified that the Accord was at the used car dealership before he and Russell opened their repair business there.

*modus operandi*, or common scheme related to the charge that he took the Mustang and that the prejudicial impact of that evidence outweighed its probative value.

From our review of the record on appeal, we conclude that we need not decide whether the trial court erred in admitting evidence of the stolen Grand Marquis and Accord. Assuming, without deciding, that the trial court erred in admitting evidence of the other stolen vehicles, our review of the record leads us to conclude that any such error was harmless.

An error may be harmless where other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Hooker v. Commonwealth, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992).

In cases where no constitutional error is alleged, Code § 8.01-678 provides that no judgment of the trial court will be reversed for any error committed at trial where "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."

In determining whether an error is harmless, we review "'the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues.'" Charity v. Commonwealth, 24 Va. App. 258, 265-66, 482 S.E.2d 59, 62 (1997) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991)). Non-constitutional error is harmless when it plainly appears from the record and the evidence given at the trial "that, had the error not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.

Here, the resolution of conflicting testimony by Russell and appellant was crucial to the jury's determination of whether appellant took Bauer's Mustang without his permission and with the intent to permanently deprive him of his vehicle. The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from proven facts are matters to be determined by

the fact finder, here the jury. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The jury observed each witness and his demeanor firsthand. It heard Bauer testify that he stored his Mustang at the Quantico base and did not give anyone permission to touch or remove the vehicle from that location. It heard that appellant frequently drove Staff Sgt. Michaels' Tahoe, a vehicle that displayed on its windshield a DOD sticker which permitted entry to Quantico. It credited Russell's testimony that, on the night of April 4, 2009, appellant alone drove Staff Sgt. Michaels' Tahoe, towing the trailer and Mustang, to the Widewater property, that appellant removed the custom parts from the Mustang and placed them in a shed, and that the VIN on the Mustang was concealed by a sheet of paper. Investigators found parts from the stolen Mustang in appellant's home office at the Widewater property. Appellant's eBay account showed that he sold one of the stolen Mustang's custom parts, a Corbeau seat bracket, on the Internet, unbeknownst to Bauer, the Mustang's owner.

By its verdict, the jury rejected appellant's testimony that he did not have access to the Quantico base, that it was Staff Sgt. Michaels, not he, who brought the Mustang to the Widewater property, that Staff Sgt. Michaels gave him the Mustang's seats as payment for any work that he might do on the car, and that he was unaware the Mustang was stolen. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). From the evidence presented at trial, the jury was free to discredit appellant's version of the circumstances surrounding the taking of the Mustang and to believe Russell's testimony.

Accordingly, we conclude that the record on appeal reflects that the jury's verdict of guilt "would have been the same" had evidence of the stolen Grand Marquis and Accord been excluded. Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911. The evidence of appellant's guilt was "so

overwhelming" that any error on the part of the trial court in admitting evidence of the stolen Grand Marquis and Accord was "insignificant by comparison." <u>Hooker</u>, 14 Va. App. at 458 n.2, 418 S.E.2d at 345 n.2; <u>see also</u> <u>Hanson v. Commonwealth</u>, 14 Va. App. 173, 190-91, 416 S.E.2d 14, 24 (1992) (error inconsequential in comparison to uncontradicted evidence of guilt rebutted only by incredible testimony of defendant). Accordingly, we conclude that the trial court's admission of the disputed evidence was harmless, and we affirm appellant's conviction of larceny, third or subsequent offense, in violation of Code § 18.2-104.

<u>Affirmed.</u>

McCullough, J., concurring.

I am unable to conclude on this evidence that the introduction of evidence concerning other stolen vehicles was harmless, if the introduction of that evidence was in error. I concur in the outcome, however, because the evidence of the other stolen cars was properly admitted on these facts – along with an instruction to the jury that limited the jury's consideration of that evidence.

Generally, evidence of prior crimes or bad acts is inadmissible to prove that the accused committed the crime charged.[9] See Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 233 (1993) (admission of other crimes evidence tends to prejudice a defendant in the minds of the jury by showing his depravity and criminal propensity). This rule is not without exception. If evidence of other conduct is relevant "to prove any element or fact in issue at trial, it should be admitted, whether or not it tends to show the [accused] guilty of another crime." Parnell v. Commonwealth, 15 Va. App. 342, 348, 423 S.E.2d 834, 838 (1992) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). Such evidence may be admitted "to prove any number of relevant facts, such as motive, intent, agency, or knowledge," Wilson, 16 Va. App. at 220, 429 S.E.2d at 234, or that the prior bad acts "'constitute a part of [a] general scheme of which the crime charged is a part.'" Rodriguez v. Commonwealth, 249 Va. 203, 206, 454 S.E.2d 725, 727 (1995) (quoting Kirkpatrick, 211 Va. at 272, 176 S.E.2d at 805). However, to be admissible, the probative value of the evidence, which coincidentally may prove a crime, must outweigh the prejudicial effect inherent in such evidence. See Wilson, 16 Va. App. at 220, 429 S.E.2d at 233-34. "'The responsibility for balancing . . . probative value and prejudice rests in the sound discretion of the trial court,' and its decision 'will not be disturbed on appeal in the absence of a clear abuse.'" Wilkins v. Commonwealth, 18 Va. App.

_____

[9] See Virginia Rule of Evidence 2:404(b).

- 9 -

293, 298, 443 S.E.2d 440, 443 (1994) (*en banc*) (quoting <u>Ferrell v. Commonwealth</u>, 11 Va. App. 380, 390, 399 S.E.2d 614, 620 (1990)).

Appellant admitted to helping take parts out of the stolen Mustang, admitted to selling one of the parts from the stolen Mustang on his eBay account but testified that he "wasn't aware that the car was stolen." According to a witness called by appellant, appellant took tires and rims off of the stolen Honda Accord and put them on his girlfriend's car. Appellant also drove the stolen Grand Marquis. There is no evidence that Michaels had anything to do with the Accord or the Grand Marquis. Evidence of the presence of these stolen cars on appellant's lot, combined with the significant fact that the VIN on these cars was, like the Mustang, strategically obscured, was relevant to establishing appellant's intent and guilty knowledge with regard to the Mustang.[10] Moreover, I find no abuse of discretion in the trial court's assessment of the probative value versus the prejudice of this evidence.

Accordingly, I concur in the outcome reached by the majority.

---

[10] Although not binding on this Court, persuasive precedent addressing comparable circumstances confirms that such evidence can be admissible to establish a defendant's guilty knowledge and intent. See <u>United States v. Evans</u>, 27 F.3d 1219, 1232 (7th Cir. 1994); <u>State v. Tucker</u>, 567 P.2d 1089, 1091 (Ore. Ct. App. 1977); <u>People v. Valoppi</u>, 233 N.W.2d 41, 43-44 (Mich. Ct. App. 1975); <u>People v. Marino</u>, 3 N.E.2d 439, 441 (N.Y. 1936); <u>Holloway v. State</u>, 52 P.2d 109, 111 (Okla. Ct. Crim. App. 1935); <u>Parsons v. State</u>, 131 N.E. 381, 382 (Ind. 1921).